**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2002-DP-01420-SCT**
**CONSOLIDATED WITH**
**NO. 96-DP-00144-SCT**
**NO. 90-DP-00015-SCT**

*ROGER ERIC THORSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/08/2002 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY: JAMES LAPPAN |
| | KELLIE WILLIAMSON KOENIG |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY: | CONO A. CARANNA, II |
| NATURE OF THE CASE: | CRIMINAL - DEATH PENALTY - DIRECT APPEAL |
| DISPOSITION: | AFFIRMED - 11/04/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     This is the third time Roger Eric Thorson has been before this Court. After his conviction by a Harrison County jury of capital murder and his sentence to death in 1988, this Court remanded this case for a ***Batson*** hearing to determine if the prosecution violated the

*Batson* criteria in exercising its peremptory challenges. ***Thorson v. State***, 653 So. 2d 876 (Miss. 1995). Upon remand, the circuit court found no ***Batson*** violation. Thorson once again appealed to this Court which reversed his conviction and remanded this matter for a new trial finding that a juror was improperly challenged based solely on her religious affiliation. ***Thorson v. State***, 721 So. 2d 590 (Miss. 1998). A new trial was conducted on June 3, 2002, in the Circuit Court of the Second Judicial District of Harrison County, Hon. Jerry O. Terry presiding. The jury once again found Thorson guilty of capital murder, and he was sentenced to death by lethal injection. Thorson appeals this conviction, citing thirty-three assignments of error. Finding these assignments to have no merit, we affirm the judgment and sentence of the Circuit Court of the Second Judicial District of Harrison County.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2. On March 4, 1987, Roger Eric Thorson visited Edgewater Mall in Biloxi in order to talk to his former fiancee, Gloria McKinney. He was worried that his neighbor and girlfriend Patricia Cook might have said some things to Gloria, so he wanted to apologize to her in person. When Thorson arrived at the mall, he learned from his friend, Reggie Brazeal, that McKinney would not get off work from Morrison's until 4:00 p.m. However, Thorson remained at the mall until McKinney left at 4:45 p.m. When McKinney exited the mall, Thorson approached her car, told her that he had come to apologize and asked her for a ride to the Cedar Lake exit. When they arrived at the exit, Thorson asked McKinney to keep driving towards his house because he still needed to talk to her. At this time, Thorson pulled a knife on McKinney. McKinney continued to drive at knife point until Thorson directed her to a dirt road. Thorson then ordered McKinney to remove all of her clothes and turn with her back

2

facing him. He then placed a .22 revolver pistol on the dashboard which he had recently purchased from his neighbor, Paul Quinn. After McKinney removed her clothes, Thorson removed a piece of rope from his jacket pocket and tied her hands behind her back. He then placed her brassiere in her mouth and tied it around her neck. Thorson then raped Gloria McKinney. After he raped her, Thorson took a towel that he had found in McKinney's car and wiped down everything that he thought he might have touched because he did not want any of his fingerprints in her car. Thorson asked McKinney if she would tell anyone what had just happened, and she shook her head indicating that she would not. Thorson told her that he did not believe her. He then took the knife and slit her throat. Thorson got out of her car and removed a blue jacket which he had given to Gloria, a plastic power steering fluid bottle and Gloria's wallet. He removed Gloria's driver's license from the wallet because he wanted a picture of her. He threw the bottle and wallet into the woods so it would appear that someone else had hurt Gloria. At this time Gloria was sitting in the car, bleeding from the wound to her neck. She was able to get out of her car and work the brassiere from her mouth. When she screamed for help, Thorson walked back to the car and shot her in the head with the .22 revolver. He then ran home and hung Gloria's coat in his closet. Thorson walked to Patricia Cook's trailer, which was directly behind his, and cleaned his hands and the knife with bleach to remove any traces of blood or gunpowder residue. He then went back to his trailer and wrapped the knife, gun, shells and Gloria's watch in Gloria's jacket and buried it in a vacant lot near his trailer.

¶3.     Thorson was arrested for the murder of Gloria McKinney on March 8, 1987. On June 3, 1987, Thorson was indicted in the Second Judicial District of Harrison County for the

capital murder and felony kidnapping of Gloria McKinney. Trial commenced on June 3, 2002. During the trial the State called several witnesses to testify during its case-in-chief. Reginald Brazeal first testified that at the time of Gloria McKinney's death he was the head chef at the Morrison's located in Edgewater Mall. Brazeal stated that when he left work on March 4, 1987, at approximately 3:30 or 4:00 p.m., Thorson was waiting in the parking lot. Thorson asked Brazeal what time McKinney would be getting off of work, and Brazeal responded that he was not sure. Thorson explained that there were "some things he wanted to get straight with her."

¶4.     The State also called Rick Gaston who was employed by the Harrison County Sheriff's Department. On March 5, 1987, Gaston was a Captain with the Patrol Division and was Shift Supervisor. Gaston first came in contact with Thorson when he was investigating McKinney's disappearance. Thorson told Gaston that he had not seen McKinney for several months. However, Gaston informed Thorson that he had been seen talking to her at the mall. Thorson explained that he had been there to see the Clydesdale horses and had seen her briefly in the parking lot when she got off of work. Thorson informed Gatson that he would be willing to help with the investigation in any way. Gatson then drove Thorson to the Central Intelligence Division (CID) where he was introduced to Investigator Jerry Tootle. Once at the CID, Thorson changed his story and told the investigators that McKinney had given him a ride from the mall the previous day. Thorson spent several hours at the CID talking to investigators on the evening of March 5, 1987, before he was returned home. The body of Gloria McKinney was subsequently found on March 7, 1987. After the body was discovered, the investigators visited Thorson's home again. Thorson voluntarily offered to come to the CID. He was not under arrest at this time.

4

¶5.    Robert Burriss, employed by the Biloxi Police Department, testified that as a crime scene technician, he was called to the scene where McKinney's body and automobile were discovered. Burriss identified several pictures taken at the scene of the crime which portrayed blood found in the victim's car, the victim with her throat cut and the victim lying in her car. Burriss also identified photographs depicting the victims hands bound and the victims mouth gagged with her brassiere. Burriss testified that when he processed the victim's automobile for fingerprints, he was only able to develop streaks which led him to believe the car had been wiped clean.

¶6.    Next, Richard Giraud, employed by the Harrison County Sheriff's Department, testified that as an investigator at the time of McKinney's murder he was present during the interview of Thorson at the CID on the evening of March 5, 1987. Giraud testified that Thorson continuously changed his story regarding talking to and seeing McKinney the previous day. During the next interview on March 7, 1987, Thorson informed the investigators that he and McKinney had driven past the Cedar Lake exit to a dirt road and had engaged in sexual intercourse. Thorson stated that McKinney then dropped him off at home. Thorson remained at CID until he was arrested at approximately 1:30 a.m. March 8, 1987. Giraud testified that he was arrested due to inconsistencies in his statements. On the morning of March 8, 1987, Giraud received information from Patricia Cook that evidence was buried near Thorson's residence. Giraud testified that the investigators found a gun, a blue jacket, a picture from the victim's driver's license and a knife. After finding these items, Giraud testified that he returned to CID and Thorson was brought from the County Jail to Jerry Tootle's office in the CID for further questioning. Giraud testified that when Thorson was shown the knife, he stated, "Well,

I guess you know the rest of the story." Thorson was then mirandized and he made a video taped confession admitting to the murder of Gloria McKinney.

¶7.     Dr. Paul McGarry, a forensic pathologist, testified that he performed the autopsy on Gloria McKinney on March 8, 1987. In describing the injuries suffered by McKinney, Dr. McGarry stated that "[s]he had a slash wound across the front of her neck that opened up her voice box, opened a hole in her larynx. She had a bullet wound to the head that went in the right temple, and had sprinkled around it gunpowder on the skin and hair, indicating it was close range." Dr. McGarry testified that the cause of McKinney's death was a "gunshot wound to the head at close range." The wound to the victim's neck would not have been fatal with proper management. A sexual assault kit was also performed on McKinney due to the extensive injuries to her genitals.

¶8.     Michael Stroud, an employee of the Harrison County Sheriff's Department, testified that he executed a waiver to allow the Department to draw a sample of Thorson's blood. Stroud also testified that a rape kit was performed on the victim. Christopher Larson, employed by ReliaGene Technologies in New Orleans, Louisiana, testified that he performed a DNA analysis on the semen taken from the rape kit and the blood taken from Thorson. From the analysis, Larson was able to determine that "the vaginal swab from Gloria McKinney was consistent with the genetic profile from the blood of Roger Thorson." At the end of this testimony, the State rested. Thorson  then moved for a directed verdict, and the trial court denied the motion.

¶9.     During the defendant's case-in-chief, Patricia Cook, Thorson's former girlfriend testified that she gave a statement to Giraud on March 9, 1987. Cook testified that she told the

6

investigators that Thorson had buried evidence on some property near his home. Cook also testified that when Thorson arrived at her home on the night of March 4, 1987, he washed his hands with bleach.

¶10.    Dr. George Tate, a clinical psychologist, testified that after spending ten and one-half hours with Thorson, reviewing police records and mental health reports, and conducting several psychological exams, Thorson was "not so impaired by mental disease or defect to make him incompetent to give a confession."

¶11.    Richard Isham testified that he spoke with Thorson on March 7, 1987, at the Harrison County Jail. During the conversation, Isham was wearing a wire and tape recorder. Isham testified that he did not inform Thorson that their conversation was being recorded. Isham testified that when he asked Thorson about the crime, Thorson responded that "there is no circumstantial evidence and he was sticking to his story."

¶12.    Thorson also testified during his case-in-chief. Thorson testified that he did go to Edgewater Mall to talk to McKinney. He stated that he only had her drive him to his house in Woolmarket. Thorson testified that during his interview he was threatened and physically abused. He stated that he only made the confession because he feared for the lives of McKinney's two young daughters. The defense rested. The State finally rested after offering no rebuttal testimony.

¶13.    On June 7, 2002, the jury returned a verdict of guilty. A sentencing hearing was held, and, on June 8, 2002, the jury returned the verdict of death finding three aggravators:

> 1) That the capital offense was committed while engaged in the commission of a kidnapping;

2) The offense was heinous, cruel and torturous; and

3) The offense was committed with the purpose of covering up and hiding evidence.

¶14.    On June 14, 2002, Thorson filed his motion for a JNOV or, in the alternative, for a new trial.   A hearing was held on the motions, and on July 8, 2002, the trial court denied the post-trial motions. On August 19, 2002, Thorson was granted permission to file an out of time appeal to this Court.

## ANALYSIS

¶15.    The standard for this Court's review of an appeal from a capital murder conviction and death sentence is abundantly clear. On appeal to this Court, convictions upon indictments for capital murder and sentences of death must be subjected to "heightened scrutiny." *Balfour v. State*, 598 So. 2d 731, 739 (Miss. 1992) (citing *Smith v. State*, 499 So.2d 750, 756 (Miss. 1986); *West v. State*, 485 So.2d 681, 685 (Miss. 1985)).   Under this method of review, all doubts are to be resolved in favor of the accused because "what may be harmless error in a case with less at stake becomes reversible error when the penalty is death." *Id.* (quoting *Irving v. State*, 361 So.2d 1360, 1363 (Miss. 1978)).   *See also Fisher v. State*, 481 So.2d 203, 211 (Miss. 1985).

### I.    "Avoiding or Preventing a Lawful Arrest or Effecting an Escape from Custody" Aggravator

¶16.    One of the aggravating circumstances limited by statute is that the capital offense must be committed "for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody." Miss. Code Ann. § 99-19-101(5)(e) (Rev. 2000). Thorson argues that (1) the aggravating factor should not have been submitted to the jury because there was insufficient

evidence to do so, (2) the evidence fails to support the finding of this aggravating factor, and (3) the jury failed to find the "avoiding arrest" aggravating circumstance.

### A. Legal sufficiency of the evidence to support aggravator

¶17. The standard of review for the legal sufficiency of evidence is well-settled:

> [W]e must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the case for the prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

*Sheffield v. State*, 749 So.2d 123, 125 (Miss. 1999) (quoting *Gleeton v. State*, 716 So.2d 1083, 1087 (Miss. 1998)). The standard for reviewing the sufficiency of the evidence to support an "avoiding lawful arrest" instruction is also well-settled:

> [i]f there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killings to "cover their tracks" so as to avoid apprehension and eventual arrest by authorities, then it is proper for the court to allow the jury to consider this aggravating circumstance.
> Under this construction the Court properly submits this aggravator to the jury if evidence existed from which the jury could reasonably infer that concealing the killer's identity, or covering the killer's tracks to avoid apprehension and arrest, was a substantial reason for the killing.

*Hansen v. State*, 592 So.2d 114, 152-53 (Miss. 1991). *See also Manning v. State*, 735 So.2d 323, 350 (Miss. 1999); *Woodward v. State*, 726 So.2d 524, 541 (Miss. 1997); *Carr v. State*, 655 So.2d 824, 853-54 (Miss. 1995); *Chase v. State*, 645 So.2d 829, 856-58 (Miss. 1994); *Lanier v. State*, 533 So.2d 473, 490 (Miss. 1988); *Leatherwood v. State*, 645 So.2d at 651

(Miss. 1983). "[J]urors are entitled to make the logical connection between the injuries suffered and finding an inference that the defendant murdered his victim to avoid arrest." *Holland v. State*, 705 So.2d 307, 355 (Miss. 1997). The defendant's efforts to avoid arrest after the murder may also be considered in connection with this aggravator. *Id.* at 355-56. Thus, it is this Court's role to "inquire into whether there is any credible evidence upon which the jury could find the aggravating circumstance in question." *Carr v. State*, 655 So.2d 824, 854 (Miss. 1995) (citing *Lanier v. State*, 533 So. 2d 473, 490 (Miss. 1988)).

¶18.    When the State offered its sentencing instruction, it included three separate elements to consider in aggravation: (1) engaged in kidnapping, (2) especially heinous, atrocious and cruel, and (3) for the purposes of avoiding and preventing arrest. Thorson objected to the "avoiding arrest" aggravator. In overruling this objection and granting the "avoiding arrest" aggravator, the trial court stated:

> COURT:    I think that based upon his testimony alone, if they wish to accept that as being beyond a reasonable doubt, that after he had had the sexual encounter with the defendant–I mean, the victim at the scene and had cut her throat, that he said that he started to leave at that point in time, and then determined that he would not, and that's when he killed her. Taking that along with the fact that he tried to wipe all identification or all fingerprints off the car and so forth, that that could be considered as evidence of his attempt to escape prosecution. I'll give that one.

¶19.    The trial court's ruling is supported by the evidence presented at trial. In his video taped confession, Thorson states that after raping McKinney, he took a towel and wiped her car down to remove any traces of fingerprints that he might have left on the car. He then asked McKinney if she would tell anyone what had happened. After indicating that she would not, Thorson, not believing her answer, slit her throat. Thorson then removed several items from

10

McKinney's car and threw them into the woods to make it appear as if someone else where responsible for the crime. Upon returning home, he washed his hands and the knife in bleach and buried several items of which would tie him to the crime scene.

¶20.    We have held that:

> If there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer or killers or to "cover their tracks" so as to avoid apprehension and eventual arrest by authorities, then it is proper for the court to allow the jury to consider this aggravating circumstance.

*Leatherwood v. State*, 435 So.2d 645, 651 (Miss. 1983). In *Wiley v. State*, 750 So.2d 1193 (Miss. 1999), this Court found that the granting of the instruction on this aggravator was proper. This Court determined that the victims knew Wiley and his efforts to dispose of and/or conceal the evidence of his crime were sufficient to support the avoiding arrest instruction. "That is, there is evidence from which the jury could have reasonably inferred that a substantial reason for the murder was to conceal Wiley's identity, or cover his tracks, so as to avoid apprehension and eventual arrest." In *Chase v. State*, 645 So.2d 829 (Miss. 1994), this Court, finding both testimony and physical evidence which justified the avoiding arrest circumstance, stated:

> The cases ... clearly indicate that the key to resolving this question of avoidance of arrest lies squarely on whether or not evidence existed within the record which would have allowed the jury to make reasonable inferences therefrom that the concealing of Chase's identity, and the covering of his tracks in order to avoid detection, apprehension and arrest, was a substantial reason for the killing of Elmer Hart.

*Id.* at 858.

11

¶21.  Similarly in the case sub judice, we find that there is sufficient evidence in the record which would have allowed the jury to make reasonable inferences that Thorson killed McKinney in an attempt to conceal his identity and cover his tracks to avoid arrest. Therefore, we find this issue to be without merit.

### B. Weight of the evidence concerning the aggravator

¶22.  Thorson next argues that the jury's finding of the "avoiding arrest" aggravator was against the overwhelming weight of the evidence. In the preceding section of this opinion, a factual basis for granting this instruction has been set forth, thus determining that the evidence at trial was sufficient to support the finding of this aggravator by the jury. Our standard of review regarding claims that a jury's verdict is against the overwhelming weight of the evidence is:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.

*Pruitt v. State*, 807 So.2d 1236, 1243 (Miss. 2002) (citing *Dudley v. State*, 719 So.2d 180, 182 (Miss. 1998)).  In *Maiben v. State*, 405 So.2d 87 (Miss. 1981), this Court stated:

> We have held in numerous cases that the jury is the sole judge of the credibility of the witnesses and the weight to be attached to their testimony. We have further said that we will not set aside a guilty verdict, absent other error, unless it is clearly a result of prejudice, bias or fraud, or is manifestly against the weight of credible evidence.

405 So. 2d at 88 (citations omitted).

12

¶23. After a thorough review of the record before this Court, we find that there is ample evidence to support the jury's finding of the "avoiding arrest" aggravator. Therefore, this claim is without merit.

### C. Constitutionality of nonstatutory aggravator finding

¶24. Thorson next contends that the jury failed to properly find the "avoiding arrest" aggravator. The language contained in the instruction given to the jury read:

> COURT: Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
>
> ******
>
> 3. The capital offense was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody.

The jury returned its verdict finding that "[t]he offense was committed with the purpose of *covering up and hiding evidence*." (emphasis added). Thorson contends that this aggravator, found by the jury, does not exist under Miss. Code Ann. § 99-19-101(5). Thorson further argues that this verdict was unresponsive to the instructions submitted to the jury and, therefore, convicted Thorson of a non-existent offense.

¶25. When the jury returned to the courtroom with its verdict, the trial court reviewed the written finding of the jury. After reviewing the verdict, the trial court invited counsel to approach the bench and examine the verdict. After the verdict was examined by counsel, the trial court asked the clerk to read aloud the verdict. Thorson was then formally sentenced by the trial court. Thorson made no objection to the form of the verdict returned by the jury. Thorson also made no objection to the form of the verdict as to this aggravator in either of the written motions for new trial. Therefore, this claim is procedurally barred. Notwithstanding any procedural bar, this issue has no merit.

13

¶26. This Court has held that:

> [t]he general rule, as found in the texts, is that ordinarily the verdict is sufficient in form if it expresses the intent of the jury so that the court can understand it, or that the test of the validity of a verdict is whether or not it is an intelligible answer to the issues submitted to the jury.

*Wilson v. State*, 197 Miss. 17, 19 So.2d 475, 475 (1944) (citations omitted). In *Jordan v. State*, 786 So.2d 987 (Miss. 2001), the defendant argued that the jury's verdict was ambiguous because it did not state that the aggravator existed beyond a reasonable doubt. This Court determined that the claim was procedurally barred because an objection was not made when the verdict was returned. *Id.* at 1003 (citing *Edwards v. State*, 737 So.2d 275, 306-07 (Miss. 1999); *Smith v. State*, 729 So.2d 1191, 1216-17 (Miss. 1998)). However, in addressing the merits of the claim, this Court stated:

> we note that the jury verdict in this case is not in ideal form. Apparently, the jury did not take the time to reword aggravator number 3 into a responsive and affirmative statement, as opposed to a suggestion or question. However, the entire verdict leaves no doubt as to what the jury found.

*Jordan*, 786 So. 2d at 1003.

¶27. Here, there can be no doubt that the jury found the "avoiding arrest" aggravator to exist in this case. Evidence was presented that Thorson wiped McKinney's car clean of all fingerprints so as to hide his identity. He threw items into the woods in the attempt to cast doubt on the true perpetrator. Thorson, immediately upon returning home, washed his hands and the knife used to slit McKinney's throat in bleach.

¶28. Pursuant to URCCC 3.10:

> When the jurors have agreed upon a verdict they shall be conducted into the courtroom by the officer having them in charge. The court shall ask the foreman or the jury panel if an agreement has been reached on a verdict. If the foreman

14

or the jury panel answers in the affirmative, the judge shall call upon the foreman or any member of the panel to deliver the verdict in writing to the clerk or the court. The court may then examine the verdict and correct it as to matters of form.

******

If a verdict is so defective that the court cannot determine from it the intent of the jury, the court shall, with proper instructions, direct the jurors to reconsider the verdict. No verdict shall be accepted until it clearly reflects the intent of the jury. If the jury persists in rendering defective verdicts the court shall declare a mistrial. . . .

The trial court and counsel all examined the verdict once returned by the jury. After finding the verdict to be in proper form, the verdict was read into the record, and the defendant was formally sentenced by the trial court. A fair reading of the verdict convinces us that the jury's decision is unambiguous, and Thorson's claim is without merit. *See, e.g., **Wilson v. State***, 197 Miss. 17, 20, 19 So.2d 475 (1944) ("Ordinarily, [a] verdict is sufficient in form if it expresses the intent of the jury so that the court can understand it.").

## II. "Especially heinous, atrocious or cruel" aggravator

¶29.    Another aggravating circumstance limited by statute is that the capital offense must be "especially heinous, atrocious or cruel." Miss. Code Ann. § 99-19-101(5)(h) (Rev. 2000). Thorson argues that (1) the aggravating factor should not have been submitted to the jury because there was insufficient evidence to do so, (2) the evidence fails to support the finding of this aggravating factor, (3) the jury failed to find the "avoiding arrest" aggravating circumstance, (4) the jury was not properly limited as to the aggravator, and (5) even if limited, the aggravator remains constitutionally vague.

### A. Legal sufficiency of the evidence to support aggravator

¶30. When the State offered its sentencing instruction, Thorson objected to the "especially heinous" aggravator. Thorson argued that the aggravator was not applicable because unlike supporting case law, this case did not involve "torture or prolonged hours and hours of suffering." In overruling this objection and granting the "especially heinous" aggravator, the trial court stated:

> COURT: I'm also going to give the especially heinous, atrocious and cruel even though at one point I had indicated that I probably wouldn't simply because of the Court's attitude toward that particular element. But I gave that same element in 1987 or '88 in the trial. And the Supreme Court affirmed the conviction, and that was raised - - that was one of the instructions that was given, and apparently they reviewed it. I know the personnel on that court has changed since the case was affirmed. But if they - - they're going to have to say they made a mistake, then, if I give it. So I'm going to define it and give it.

¶31. Thorson argues that there was no evidence presented at trial to support the submission of this aggravator to the jury. The State argues that the evidence presented at this trial was almost the exact evidence presented at the first trial. However, in the first trial this Court did not address the issue of the "especially heinous" aggravator. *See **Thorson v. State***, 653 So. 2d 876 (Miss. 1995).

¶32. In the present case, the victim was ordered to drive to a deserted dirt road at knife point, where she was bound, gagged and raped. The victim was asked if she would tell anyone what had happened. When she indicated that she would not, her attacker told her that he did not believe her and then slit her throat. The victim was then left to bleed to death in her car while her killer cleaned up after himself. When the victim attempted to scream for help, Thorson shot her in

16

the head. In his confession, he stated that, "I had already cut her throat and she was already suffering," so he shot her.

¶33.    In *Davis v. State*, 684 So.2d 643, 662 (Miss. 1996), we held that the number of wounds and the fact that death was not immediate, but prolonged may be properly considered as evidence supporting a jury's finding of the "especially heinous" aggravator. In *Evans v. Thigpen*, 631 F. Supp. 274, 285 (S.D. Miss. 1986), *aff'd*, 809 F.2d 239 (5th Cir. 1987), the United States District Court for the Southern District of Mississippi stated that "[t]he mental anguish and psychological torture suffered by the victim prior to the infliction of the death-producing wound may be considered with respect to the 'heinous, atrocious or cruel' factor and make its application constitutionally unobjectionable." *See also Stevens v. State*, 806 So.2d 1031, 1060 (Miss. 2001).

¶34.    Here, we find that there is sufficient evidence in the record which would have allowed the jury to find the "especially heinous" aggravator to exist. Therefore, we hold this issue to be without merit.

### B. Weight of the evidence concerning the aggravator

¶35.    Thorson next argues that the jury's finding of the "especially heinous" aggravator was against the overwhelming weight of the evidence. In the preceding section of this opinion, a factual basis for granting this instruction has been set forth, thus determining that the evidence at trial was sufficient to support the finding of this aggravator by the jury.

¶36.    Thorson stated that at least ten to fifteen minutes elapsed between the time the victim's throat was cut and when she was shot. Dr. McGarry testified that with proper management, the

17

neck wound would not have been fatal. However, McKinney was bound and gagged and on a deserted dirt road where proper care was not attainable.

¶37. After a thorough review of the record before this Court, we find that there is ample evidence to support the jury's finding of the "especially heinous" aggravator. Therefore, this claim is without merit.

### C. Constitutionality of nonstatutory aggravator finding

¶38. Thorson next contends that the jury failed to properly find the "especially heinous" aggravator. The language contained in the instruction given to the jury read:

> COURT: Consider only the following elements of aggravation in determining whether the death penalty should be imposed:
> ******
> 2. Whether the capital offense was especially heinous, atrocious or cruel. . . .

The jury returned its verdict finding that "[t]he offense was heinous, cruel and *torturous*." (emphasis added). Thorson contends that this aggravator, found by the jury, does not exist under Miss. Code Ann. § 99-19-101(5). Thorson further argues that the jury convicted Thorson of a non-existent offense.

¶39. As stated in the previous issue, Thorson did not object to the form of the verdict once it was returned by the jury. Therefore, this issue is procedurally barred. Procedural bar notwithstanding, this issue is also without merit. Although the jury verdict is not in ideal form, the verdict leaves no doubt as to the finding of the jury. *See Jordan v. State*, 786 So.2d 987 (Miss. 2001); *Wilson v. State*, 197 Miss. 17, 20, 19 So.2d 475 (1944). Evidence was presented that McKinney was held at knife point and was forced to drive to a secluded area. Once there, she was forced to undress. McKinney was then raped, her throat was cut, and she

was left to bleed to death. When she attempted to scream for help, Thorson shot McKinney in the head. Also in the limiting instruction, which will be discussed in greater detail in the section below, the jury was instructed that a heinous offense was a "conscienceless or pitiless crime which is unnecessarily *torturous* to the victim." (emphasis added). Therefore in finding the aggravator of "heinous, cruel and torturous," the jury followed the instructions of the court. Therefore, there can be no question as to the intent of the jury, and this issue is without merit.

### D. Limiting instruction

¶40.    Thorson next argues that the limiting instruction given for the "especially heinous" aggravator did not properly limit the aggravator. Sentencing Instruction SP-2 stated:

> The Court instructs the jury that in considering whether the capital offense was especially heinous, atrocious or cruel: heinous means extremely wicked or shockingly evil; atrocious means outrageously wicked and vile; and cruel means designed to inflict a high degree of pain with indifference to, or even enjoyment of the suffering of others.
> An especially heinous, atrocious or cruel capital offense is one accompanied by such additional acts as to set the crime apart from the norm of capital murders–the conscienceless or pitiless crime which is unnecessarily torturous to the victim. If you find from the evidence beyond a reasonable doubt that the defendant utilized a method of killing which caused serious mutilation, that there was dismemberment of the body prior to death, that the defendant inflicted physical or mental pain before death, that there was mental torture and aggravation before death, or that a lingering or torturous death was suffered by the victim, then you may find this aggravating circumstance.

Thorson objected to this instruction at trial stating that although it may be a correct definition of the law, it was "horribly offensive. . . extremely graphic and shocking and unnecessary." Thorson argued that the elements discussed in the instruction were not applicable to the instant case. The trial court, in overruling the objection and in allowing the instruction to be granted,

19

stated that the "purpose of the objection [is] to set this crime apart or to set this element apart from all other capital murder cases or capital offenses. . . ."

¶41.    Thorson argues that first paragraph of the above instruction was held unconstitutional by the United States Supreme Court in *Shell v. Mississippi*, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990). Thorson further contends that in *Hansen v. State*, 592 So. 2d 114 (Miss. 1991), this Court announced that the language held unconstitutional in *Shell* should not be submitted to juries. Therefore, Thorson concludes that Instruction SP-2 has been determined by the United States Supreme Court and this Court to be per se objectionable. In *Shell*, the Supreme Court found that when used alone, language identical to that used in the first paragraph of instruction SP-2 was not constitutionally sufficient. 498 U.S. at 2. However, in *Clemons v. Mississippi*, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the Supreme Court determined that the first sentence of the second paragraph was a proper limiting instruction when used in conjunction with the language from *Shell*. This Court has repeatedly held this identical instruction to be constitutionally sufficient. *See* *Knox v. State*, 805 So.2d 527, 533 (Miss. 2002); *Puckett v. State*, 737 So.2d 322, 359-60 (Miss. 1999); *Jackson v. State*, 684 So.2d 1213, 1236-37 (Miss. 1996). Therefore, this argument is wholly without merit.

### E. Constitutionality of the aggravator

¶42.    Thorson argues that the United States Supreme Court has never approved a limiting instruction for Miss. Code Ann. § 99-19-101(5)(h); therefore, this section must be stricken as unconstitutional. Similar limiting language like that employed in the last sentence of Instruction SP-2, was approved by the Supreme Court in *Lewis v. Jeffers*, 497 U.S. 764, 768-

20

70, 110 S.Ct. 3092, 3096, 111 L.Ed.2d 606, 615-16 (1990) and *Walton v. Arizona*, 497 U.S. 639, 645-47, 110 S.Ct. 3047, 3053, 111 L.Ed.2d 511, 523-24 (1990). In *Puckett v. State*, 737 So. 2d 322 (Miss. 1999), this Court, finding that the language approved by the Supreme Court in *Walton* was similar to the instruction used in the case at bar, denied the defendant's claim that the Supreme Court had failed to approve any limiting instruction for Mississippi's "especially heinous, atrocious or cruel" aggravator. Therefore, this issue is without merit.

### III. The application of Ring v. Arizona

¶43.    Thorson argues that the recent cases of *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), require that his sentence be vacated. This issue is raised for the first time on appeal by Thorson and is thus, procedurally barred. Notwithstanding the procedural bar, this issue is without merit.

¶44.    Thorson argues that *Ring* prohibits the duplicative use of the kidnapping aggravator as the sole selection factor at the penalty phase when the jury had previously found that Thorson committed the crime at the culpability phase. Thorson also argues that Miss. Code Ann. § 97-3-19(2)(e) is unconstitutional in that it permits the jury to apply the death penalty where murder was committed during the course of certain felonies, but does not authorize the death penalty in cases of simple murder. Finally, Thorson contends his indictment was improper as it failed to enumerate the aggravating factors. This Court has previously discussed all of these issues as they relate to the recent cases of *Ring* and *Apprendi*. As we have continuously held that these case have no application to Mississippi's capital murder sentencing scheme, we find these issues to be without merit. *See Berry v. State*, 882 So. 2d 157, 170-73 (Miss. 2004)

(We have previously discussed these cases at length and concluded that they address issues wholly distinct from our law, and do not address indictments at all.)

¶45.    In ***Berry v. State***, 882 So 2d 157 (Miss. 2004), we held that:

> Mississippi's capital scheme is distinct from Arizona's in the single, most relevant respect under the ***Ring*** holding: that it is the jury which determines the presence of aggravating circumstances necessary for the imposition of the death sentence. *See* Miss. Code Ann. § 99-19-101 (2000).
> Likewise, the ***Ring*** court considered Mississippi's scheme to be part of a majority of states who have responded to its Eighth Amendment decisions and require that juries make the final determination as to the presences of aggravating circumstances. ***Ring***, 536 U.S. at 608 n. 6.

***Berry***, 882 So. 2d at 173. In ***Stevens v. State***, 867 So.2d 219 (Miss. 2003), the defendant argued that his death sentences should be vacated because the aggravating circumstances which charged capital murder were not included in his indictment. This Court held that:

> The State is correct in its assertion that a defendant is not entitled to formal notice of the aggravating circumstances to be employed by the prosecution and that an indictment for capital murder puts a defendant on sufficient notice that the statutory aggravating factors will be used against him. ***Smith v. State***, 729 So.2d 1191, 1224 (Miss. 1998) (relying on ***Williams v. State***, 445 So.2d 798 (Miss.1984)).
>> We believe that the fact that our capital murder statute lists and defines to some degree the possible aggravating circumstances surely refutes the appellant's contention that he had inadequate notice. Anytime an individual is charged with murder, he is put on notice that the death penalty may result. And, our death penalty statute clearly states the only aggravating circumstances which may be relied upon by the prosecution in seeking the ultimate punishment.
>
> ***Id.*** at 804-05. This issue is without merit.

***Stevens v. State***, 867 So.2d at 227. *See also* ***Puckett v. State***, 879 So 2d 920 (Miss. 2004);

***Holland v. State,*** 878 So.2d 1, 9 (Miss. 2004).

¶46.    In ***Wilcher v. State***, 697 So.2d 1087, 1108 (Miss. 1997), this Court held:

Wilcher also argues that the use of the underlying felony as an aggravating circumstance violates the Eighth Amendment in that it does not "genuinely narrow" the class of death-eligible defendants. Wilcher did not raise this issue at trial, and therefore, is procedurally barred from doing so on appeal. *Walker v. State*, 671 So.2d 581, 612, (Miss.1995) (citing *Foster v. State*, 639 So.2d 1263, 1270; *Cole v. State*, 525 So.2d 365, 369 (Miss.1987)). Furthermore, even if the issue were not procedurally barred, this Court has repeatedly rejected the argument raised by Wilcher:

> The use of the underlying felony ... as an aggravator during sentencing has been consistently upheld in capital cases. This Court has stated:
>
>> The argument is the familiar "stacking" argument that the state can elevate murder to felony murder and then, using the same circumstances can elevate the crime to capital murder with two aggravating circumstances. As pointed out in *Lockett v. State*, 517 So.2d 1317, 1337 (Miss.1987), this Court has consistently rejected this argument.
>
> *Minnick v. State*, 551 So.2d at 96-97. The United States Supreme Court has confirmed that this practice does not render a death sentence unconstitutional. *Lowenfield v. Phelps*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). *See also, Ladner v. State*, 584 So.2d 743, 763 (Miss.1991).

*Walker*, 671 So.2d at 612.

\*\*\*\*\*\*

Wilcher's final argument on this point is that the felony murder aggravator is disproportionate within the meaning of the Eighth Amendment. Specifically, Wilcher argues that unintentional felony murder is punishable by death, while premeditated murder, standing alone, is not.

> Our precedents make clear that a State's capital sentencing scheme must ... *genuinely narrow* the class of defendants eligible for the death penalty. When the purpose of a statutory aggravating circumstance is to enable the sentencer to distinguish those who deserve capital punishment from those who do not, the circumstance must provide a principled basis for doing so. *If the sentencer fairly could conclude that an aggravating circumstance applies to every defendant eligible for the death penalty, the circumstance is constitutionally infirm*.

*Blue v. State*, 674 So.2d 1184, 1216 (Miss.1996) (quoting *Arave v. Creech*, 507 U.S. 463, 474, 113 S.Ct. 1534, 1542, 123 L.Ed.2d 188 (1993)) (emphasis in original).

> Not every defendant eligible for the death penalty will have committed murder while in the course of robbery or kidnapping or the other statutorily enumerated felonies. *See* Miss. Code Ann. § 97-3-19. Therefore, the felony murder aggravator genuinely narrows the class of defendants eligible for the death penalty. Furthermore, "[t]he legislature has a very great latitude in prescribing and fixing punishment for crime." ***Smith v. State***, 419 So.2d 563, 567 (Miss.1982), *overruled on other grounds,* ***Willie v. State***, 585 So.2d 660, 681 (Miss.1991).
>
> Moreover, the aggravating factor for murder committed during the course of a robbery is constitutional. *See* ***Lowenfield v. Phelps***, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). *See also* ***Lockett v. State***, 614 So.2d 888, 897 (Miss.1992) ["This Court has previously determined that Mississippi's capital sentencing scheme, as a whole, is constitutional."]. For these reasons, Wilcher's argument fails.

***Wilcher***, 697 So.2d at 1108-09. Therefore, this issue is without merit.

### IV. The application of <u>Stromberg v. California</u>

¶47.     On appeal Thorson argues for the first time that his death sentence must be vacated due to the rule of independent sufficiency announced in ***Stromberg v. California***, 283 U.S. 359, 51 S.Ct. 530, 75 L.Ed. 1117 (1931). Two rules were derived from ***Stromberg***. First, "a general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground." ***Zant v. Stephens***, 462 U.S. 862, 881, 103 S.Ct. 2733, 2745, 77 L.Ed.2d 235 (1983). Thorson argues this rule of ***Stromberg*** applies because although the jury was given three separate aggravators to consider, the jury only properly found one aggravator to exist, Miss. Code Ann. § 99-19-101(5)(d). Thorson's arguments are barred by his failure to present it to the trial court.   Notwithstanding the procedural bar of raising this issue for the first time on appeal, this Court has previously determined that the jury properly

24

found all three aggravators which were properly submitted to them to exist. Therefore, this rule of *Stromberg* does not apply.

¶48. The second rule of *Stromberg* "encompasses a situation in which the general verdict on a single-count indictment or information rested on *both* a constitutional and an unconstitutional ground." *Zant*, 462 U.S. at 882. Thorson argues this rule is applicable again citing the jury's "nonstatutory and presumed, disassociated articulation" of Miss. Code Ann. § 99-19-101(5)(e). Notwithstanding the procedural bar, this Court has previously discussed this issue and has determined that the jury properly found that Thorson committed the offense for the purpose of avoiding arrest. Therefore, the second rule of *Stromberg* also is inapplicable to the case at bar. This issue is also without merit.

### V. Jury Instruction DS-5

¶49. The standard of review for challenges to jury instructions is as follows:

> Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.

*Heidel v. State*, 587 So.2d 835, 842 (Miss. 1991) (internal citations omitted). Thorson argues that the trial court erred in refusing to grant Jury Instruction DS-5. The State objected to DS-5 as repetitive of Jury Instruction DS-4 which the trial court granted. The trial court agreed with the State and refused the instruction as being repetitive.

¶50. Jury Instruction DS-5 read as follows:

> Each individual juror must decide for himself or herself whether death or life imprisonment is the appropriate punishment for defendant. Even if mitigating

25

circumstances do not outweigh aggravating circumstances, the law permits you the Jury to impose a sentence of life imprisonment without possibility of parole or a sentence of life imprisonment with the possibility of parole out of a determination that one of those sentence is the appropriate punishment under the circumstances. Only if you, the jurors, unanimously agree beyond a reasonable doubt that death is the appropriate punishment may you impose the sentence of death. You should indicate your findings on the jury verdict form which you will have with you in the jury deliberation room.

Jury Instruction DS-4, which was given to the jury, read as follows:

The court instructs the jury that you are not required to find unanimously that a mitigating circumstance exists before considering it. You are required to consider all mitigating circumstances. In considering the mitigating circumstances, each of you may decide for yourself what weight and consideration is to be given to mitigating circumstances. Each individual juror is required to consider all mitigating circumstances found by that juror, whether or not the other jurors found them. A mitigating circumstance does not have to be proven beyond a reasonable doubt to exist.

You may sentence the Defendant to life imprisonment if you find that only one mitigating circumstance exists and multiple aggravating circumstances exist. You may also sentence the defendant to life imprisonment if you find that no mitigating circumstance exists. You are not required to find any mitigating circumstances in order to return a sentence of life imprisonment. Nor does the finding of an aggravating circumstance require that you return a sentence of death.

You, the jury, always have the option to sentence the defendant to life imprisonment, whatsoever finding you make.

Thorson argues that DS-5 is not repetitive of DS-4 because DS-5 contains the command that the jury must "unanimously agree beyond a reasonable doubt that death is the appropriate punishment" in order for the jury to return such punishment. First, when reading the jury instructions as a whole, Jury Instruction SP-1 sufficiently instructed the jury they must unanimously find that in order to return a sentence of death, the aggravating factors must outweigh the mitigating circumstances beyond a reasonable doubt.

26

¶51.    Second, this instruction is nothing more than a mercy instruction and was properly refused by the trial court. Miss. Code Ann. § 99-19-101(2)(c) requires that the jury find that the mitigating circumstances outweigh the aggravating circumstances. *See Foster v. State*, 639 So.2d 1263, 1301 (Miss. 1994); *Shell v. State*, 554 So.2d 887, 904 (Miss. 1989); *Jordan v. State*, 365 So.2d 1198 (Miss. 1978). *See also Gray v. Lucas*, 677 F.2d 1086 (5th Cir. 1982). In *Hansen v. State*, 592 So.2d 114, 150 (Miss. 1991), this Court held that "our cases have consistently refused to hold that the Court is required to grant a mercy instruction." Therefore, this issue is without merit.

### VI. Jury Instruction DS-10

¶52.    Thorson next argues that the trial court erred in refusing Jury Instruction DS-10, which defined "mitigating circumstance" to the jury. The State objected to the instruction as an improper statement of law, and the instruction was refused by the trial court. The State argues that the jury was properly instructed through Jury Instruction SP-1 as to the definition of a mitigating factor. We agree. SP-1 fully informed the jury of what a mitigating factor is and how it is to be considered. Therefore, considering the jury instructions as a whole, the trial court properly refused to grant Jury Instruction DS-10. *See Woodham v. State*, 800 So.2d 1148, 1156 (Miss. 2001); *Williams v. State*, 803 So.2d 1159, 1163 (Miss. 2001). This issue is without merit.

### VII. Jury Instructions DS-4 and DS-14

¶53.    Thorson next contends that the trial court erred in refusing Jury Instruction DS-14 only after the trial court, in instructing the jury, failed to enunciate the word "individual" in Jury

27

Instruction DS-4. Thorson argues that DS-14 was only refused because it was repetitive of DS-4, in that DS-14 stated:

> Each <u>individual</u> juror must decide for himself or herself whether death is the only appropriate punishment for ROGER ERIC THORSON. Only if each and every juror finds beyond a reasonable doubt that death is the appropriate punishment may you impose a death sentence.

The State argued that in light of granting DS-4, this instruction was repetitive. Thorson argued that although it was "repetitive in that you have said all 12 must agree, [] that's not saying the same thing, that all 12 agree as it is for each and every one must find." The trial court stated:

> [A]s far as DS-14 is concerned, the first sentence saying that "must decide for himself or herself whether death is the only appropriate punishment for Roger Thorson," I don't think that they have to decide that that is the only appropriate punishment. They can just simply find that it is an appropriate punishment. Because they might find that sure, life without parole is appropriate; life with parole is appropriate. But to say that they've got to exclude these others, that's not necessarily what they have to do. They have to decide whether or not the aggravating circumstances outweigh the mitigating circumstances, and then assess the penalty.

The State further argued that:

> The purpose, the State feels, of these individual instructions that really say all the same thing. . . is that the word "individual" is highlighted. That is an effort to single out - - have an individual hold out potentially for being against the death penalty.

The trial court agreed with the State's argument and refused Jury Instruction DS-14. Therefore, the trial court correctly found that Jury Instruction DS-14 was an incorrect statement of law and properly refused to grant such an instruction. *See Simmons v. State*, 805 So. 2d 452, 500 (Miss. 2001); *Williams v. State*, 667 So. 2d 15, 23 (Miss. 1996). Therefore, we find this issue to be without merit.

### VIII. Jury Instruction DS-6

28

¶54.    Thorson next argues that the trial court erred in refusing to grant Jury Instruction DS-6. The first part of the instruction mirrored an instruction already granted by the trial court which explained the procedure used in a capital murder case. The trial court also explained this procedure to the jury during voir dire. However, the final sentences of the instruction read, "The death penalty is a unique punishment. It is final and irrevocable. You must render a decision based on the evidence free from passion and prejudice." The State objected to this instruction stating that these sentences were improper. The trial court announced his concerns regarding the instruction finding:

> It sounds to me in the second paragraph that the Court is arguing to the jury the defense. The only way I will give DS-6 is to delete the second paragraph, which I think is repetitious with the first sentencing instruction actually.

Thorson submitted the instruction as originally read, and the trial court refused the instruction. Thorson argues that the trial court erred in refusing to grant the instruction because the jury was not instructed that (1) the focus of the capital sentencing decision is not the same as an ordinary case, (2) the sentence of death is a unique situation in that it is irrevocable and final, and (3) the jury's sentencing decision must be made free from passion and prejudice.

¶55.    Thorson cites three cases to support these propositions. *Woodson v. North Carolina*, 428 U.S. 280, 303-04, 96 S.Ct. 2978, 2991, 49 L.Ed.2d 944 (1976) ("[D]eath is a punishment different from all other sanctions in kind rather than degree."); *Gregg v. Georgia*, 428 U.S. 153, 187, 96 S.Ct. 2909, 2931, 49 L.Ed.2d 859 (1976) ("[D]eath as a punishment is unique in its severity and irrevocability."); *Flores v. Johnson*, 210 F.3d 456, 459 (5th Cir. 2000) ("Death is the most final, and most severe, of punishments."). While these general propositions are true, none of these cases stands for the proposition that the jury must receive an instruction

29

stating that a death sentence proceeding is different from an ordinary criminal proceeding. Thorson has failed to cite any relevant authority in support of this assertion. This Court has continuously held that such failure to cite relevant authority "obviates the appellate court's obligation to review such issues. *Simmons v. State*, 805 So.2d at 487 (citing *Williams v. State*, 708 So.2d 1358, 1362-63 (Miss. 1998)). Therefore, this issue is not properly before the Court and is procedurally barred from our consideration.

¶56. Procedural bar notwithstanding, the trial court properly denied Jury Instruction DS-6. As previously stated, during voir dire, the trial court properly informed the jury that sentencing was different in capital cases. The trial court generally explained to the jury that it would determine the penalty which would be imposed. The jury was further subjected to the death qualification process conducted during voir dire. The jury was also instructed that it should "consider and weigh any aggravating and mitigating circumstances, [], but you are cautioned not to be swayed by mere sentiment, conjecture, sympathy, *passion, prejudice*, public opinion or public feeling."(emphasis added). Therefore, the jury was fully instructed to make its decision free from "passion" and "prejudice." We find this issue to be without merit.

### IX. Jury Instructions DS-15 and DS-8

¶57. Thorson argues that the trial court improperly refused to grant Jury Instructions DS-8 and DS-15. The State objected to both instructions being given to the jury. As to DS-8, the State argued that although the instruction was a correct statement of law, it was confusing to the jury. The trial court agreed and denied the instruction as repetitious of the instructions already given. As to instruction DS-15, the State argued and the trial court agreed that the instruction was repetitive.

¶58. DS-8 read as follows:

The Court instructs the jury that mere probabilities are not sufficient to warrant a finding of an aggravating circumstance. It is not sufficient that the greater weight or preponderance of the evidence supports the aggravating circumstance. It is also not sufficient that it may be more probable than not that the aggravating circumstance exists.

Before you may find an aggravating circumstance, the prosecution must convince you of its existence beyond a reasonable doubt. If the prosecution has failed to produce such proof, it is your sworn duty not to find the aggravating circumstance.

DS-15 read as follows:

The Court instructs the jury that before the defendant can be sentenced to death, any aggravating circumstances must be proven to you beyond a reasonable doubt. It must also be proven to you beyond a reasonable doubt that the mitigating circumstances do not outweigh the aggravating circumstances. Finally, it must also be proven to you beyond a reasonable doubt that death is the only appropriate punishment for defendant.

If upon the evidence any one of you has a reasonable doubt as to any of these matters, the Jury must inform the Court, in writing, that you are unable to agree unanimously on punishment.

Thorson argues that the language found in these two instructions is not found in any of the instructions given to the jury. The trial court properly instructed the jury in Jury Instruction SP-1 as to the proper burden of proof in finding aggravating circumstances in order to return the penalty of death. The trial court instructed the jury that "[y]ou must unanimously find, beyond a reasonable doubt, that one or more of the preceding aggravating circumstances exists in this case to return the death penalty." Therefore, the trial court was correct in refusing DS-8 on the grounds that it was repetitious of other instructions given.

¶59. As to Jury Instruction DS-15, Thorson argues only the first sentence is covered under Jury Instruction SP-1; therefore, it is not repetitive. In this instruction, Thorson argues that the jury must be instructed that they must find "beyond a reasonable doubt that the mitigating

31

circumstances do not outweigh the aggravating circumstances." This statement is contrary to statute and case law. Miss. Code Ann. § 99-19-101(2)(c) & (3)(c) require that the jury find that mitigating circumstances outweigh the aggravating circumstances. This Court has held that "beyond a reasonable doubt" is not the burden on the weighing process.

> The majority rule of this Court is that the jurors are required to find the existence of each aggravating circumstance beyond a reasonable doubt, but the jury is not required to find that the aggravating circumstances beyond a reasonable doubt outweigh the mitigating circumstances following the statute.

*Edwards v. State*, 737 So.2d 275, 314 (Miss. 1999) (citations omitted). *See also Simmons v. State*, 805 So. 2d at 500; *Berry v. State*, 703 So. 2d 269, 289-90 (Miss. 1997).

¶60. This instruction also contains language that requires the jury to find that death is the only appropriate penalty. This Court has addressed this issue numerous times and has continuously held that the Mississippi statutory scheme does not require any such finding. *See Simmons*, 805 So. 2d at 500; *Williams v. State*, 684 So. 2d at 1202. We find the trial court properly refused Jury Instruction DS-15. This issue is, thus, without merit.

### X. Jury Instructions DS-16 and DS-17

¶61. Thorson next argues the trial court erred in refusing to grant Jury Instructions DS-16 and DS-17. The State objected to these two instructions as mercy instructions. In refusing to grant the instructions, the trial court stated that although the jury could allow mercy if they so chose, it was not proper for the court to comment on them affording mercy.

¶62. DS-16 read as follows:

> The Court instructs the Jury that a decision to afford an individual defendant mercy and thereby sentence him to life imprisonment without possibility of parole or to life imprisonment with the possibility of parole would not violate the laws of this State or your oath as jurors. Even if you find there are no

mitigating circumstances in this case which are worthy of your consideration, then, nevertheless, you may still sentence defendant to life imprisonment without possibility of parole of life imprisonment with possibility of parole.

DS-17 read as follows:

The Court instructs the Jury that, whether mitigating circumstances exist or not, you may recommend mercy for the defendant and sentence him to life imprisonment without possibility of parole or life imprisonment with possibility of parole. This recommendation is solely in your discretion and not controlled by any rule of law. You may make such recommendation with or without a reason.

Thorson concedes that DS-17 was a mercy instruction; however, Thorson argues that only the first sentence of DS-16 contained mercy language. Thorson further argues that pursuant to the Eighth and Fourteenth Amendments, either the first sentence of DS-16 or DS-17 in its entirety should have been submitted to the jury.

¶63.    This Court has explicitly held that a "defendant has no right to a mercy instruction." *Ladner v. State*, 584 So.2d 743, 761 (Miss. 1991). *See also Edwards v. State*, 737 So.2d 275, 317 (Miss. 1999); *Doss v. State*, 709 So.2d 369, 394 (Miss. 1996); *Foster v. State*, 639 So.2d 1263, 1300-01 (Miss. 1994). "The United States Supreme Court has held that giving a jury instruction allowing consideration of sympathy or mercy could induce a jury to base its sentencing decision upon emotion, whim, and caprice instead of upon the evidence presented at trial." *Jordan v. State*, 728 So.2d 1088, 1099 (Miss. 1998) (citing *Saffle v. Parks*, 494 U.S. 484, 492-95, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990)). Therefore, in light of the foregoing authorities, we find the trial court properly refused to grant the two mercy instructions. This issue is without merit.

## XI. Prosecutorial Conduct

¶64. Thorson next contends that the argument of the prosecutor during the closing argument of the penalty phase of the trial amounted to prosecutorial misconduct. Thorson contends that the prosecution employed a "send a message" argument, argued that Thorson had shown no remorse, used a victim impact argument and finally misstated evidence surrounding McKinney's death. Thorson objected only one time during the closing argument of the State during the penalty phase of the trial. That objection did not address any of the issues raised here by Thorson. This Court has repeatedly held that "[i]f no contemporaneous objection is made, the error, if any, is waived. This rule's applicability is not diminished in a capital case." *Foster v. State*, 639 So.2d 1263, 1270 (Miss. 1994). *See also* **Walker v. State**, 671 So.2d 581, 597 (Miss. 1995). Therefore, Thorson's failure to object at trial bars this claim from consideration on appeal. Notwithstanding the procedural bar, this issue is without merit.

¶65. Thorson contends that numerous instances of improper argument occurred during the State's closing argument in the penalty phase. The final paragraphs of the State's closing argument read as follows:

> Ladies and gentlemen of the jury, please consider that this man has shown no remorse. He has not accepted responsibility for this crime. That he has brutally murdered this woman. This case cries out, this case begs for justice. And on behalf of the State of Mississippi, we are asking and we are compelling you on behalf of the victim's family and on behalf of the State of Mississippi to impose the ultimate sanction, to render a death penalty. And I say that and I will close with two thoughts: One, the reason why this case is a death penalty case, why it cries out for a death penalty is that there's certain behavior that can never be tolerated. To simply murder an individual is not a capital murder offense; it's not death penalty eligible. To simply kidnap an individual is not death penalty eligible. But to do all the things that you found Mr. Thorson did, that's what makes it death eligible.
> We cannot tolerate that. And to show that that cannot be tolerated and will not be tolerated, I'd ask on your oath that you follow the law, because if you follow the law, it's all there. It's very straightforward.

Lastly, ladies and gentlemen, again, when you make the difficult decision, I want you to think about that ten seconds, what this poor woman had been through. And after suffering all of it, he had the gall and the nerve to ask her if she'd tell. And even though she said no, he just decided that he'd go ahead and kill her anyway. That cannot and must not be tolerated, and on behalf of the victims and the State of, Mississippi I would ask that you impose the death penalty against Roger Thorson. Thank you.

Thorson first argues that the State issued a "send a message" appeal to the jury which constitutes prosecutorial misconduct. Thorson fails to point out to this Court exactly which part of the State's closing argument constituted a "send a message" appeal. Reading the State's closing argument in context, the prosecutor stated to the jury that Thorson's actions "cannot and must not be tolerated." This Court addressed the issue of sending a message to the jury regarding sentencing a defendant to death in *King v. State*, 784 So. 2d 884 (Miss. 2001), and held that it was proper for either side to argue their position regarding the death penalty in the sentencing phase of a bifurcated trial.

> Miss. Code Ann. § 99-19-101(1) provides in pertinent part: "The state and the defendant and/or his counsel shall be permitted to present arguments for or against the sentence of death." Clearly, it is appropriate for the defense to ask for mercy or sympathy in the sentencing phase. It is equally appropriate for the state to further its goal of deterrence by arguing to "send a message" in the sentencing phase. Both of these arguments are recognized as legitimate considerations to be had by those who argue "for or against" the death penalty. In *Humphrey v. State*, 759 So.2d 368, 374 (Miss.2000), we allowed the prosecution to present a "send a message" argument to the jury during the sentencing phase of a bifurcated capital trial. We based our decision on *Wells v. State*, 698 So.2d 497, 513 (Miss.1997), where we chose "not to fault the prosecution for arguing that the 'message' conveyed by a death penalty verdict would be different than that urged by the defense." We stated, "To do so would be disingenuous given the inescapable reality that deterrence is, in fact, an established goal of imposing the death penalty, which goal necessarily entails, to some extent, sending a message."
> We today follow the above-cited statute and hold that in closing argument during the sentencing phase each side may argue its respective position on the death

penalty. Of course, neither side may ever argue these positions during the guilt phase; for a conviction or an acquittal must be based solely on law and fact.

*King*, 784 So.2d at 889-90. Therefore, this Court finds that there was no error in the State's argument concerning a "sending the message" appeal to the jury.

¶66.    Thorson next argues that State improperly stated in closing argument that the defendant showed no remorse for the crime of which he had been convicted. Thorson confessed to killing Gloria McKinney. When Thorson testified at the guilt phase, he repudiated his confession and denied any part in McKinney's murder. In *Bell v. State*, 725 So. 2d 836, 852 (Miss. 1998), this Court held that when a capital defendant takes the stand and testifies, argument as to showing no remorse is not error.   In *Holly v. State*, 671 So. 2d 32, 35 (Miss. 1996), as in the case subjudice, Holly testified in the guilty phase but did not testify in the sentencing phase of the trial. During closing arguments, the State made several comments as to the defendant showing no remorse for the offense of which he was convicted. *Id.* This Court held that the comments made by the State concerned Holly's credibility and demeanor which Holly had placed before the jury by testifying during the guilty phase. *Id.* "'The prosecution is always free to discuss at length the testimony of the State's witnesses and why they are credible.'" *Id.* (quoting *Whigham v State*, 611 So.2d 988, 995 (Miss. 1992)). "Nor is a prosecuting attorney prevented from commenting on the appearance of the defendant as it existed during his testimony." *Id.* (citing *Reed v. State*, 197 So.2d 811, 815 (Miss. 1967); *Knox v. State*, 502 So.2d 672, 675 (Miss. 1987)). Therefore, the State did not err in commenting on the defendant's lack of remorse.

¶67. Thorson also contends that since the State introduced no victim impact testimony during the sentencing phase, the references to the victim's family was improper. The State asked the jury, on behalf of the State and the victim's family, to return a sentence of death. These statements did not amount to victim impact evidence. They were merely pleas on behalf of the State and the family of the victim to return a sentence of death. Therefore, this Court finds no error.

¶68. Finally, Thorson argues that there was no basis in the evidence for the State's contention that McKinney suffered, the length of her suffering or that Thorson killed McKinney because he did not trust her. The State argues there were no misstatements of fact made during the closing argument. Reviewing the transcript, there was testimony that Gloria McKinney was kidnapped at knife and gun point, forced to strip off her clothes, bound, gagged and raped. McKinney was forced to endure all of this before her throat was cut. There was also testimony that Thorson asked McKinney if she would tell anyone what he had done to her. After she indicated that she would tell no one, Thorson chose to cut her throat and later shoot her. Based on the evidence submitted at trial, this Court finds that the State did not misstate facts in the closing argument. Finding no prosecutorial conduct occurred, this issue is without merit.

### XII. Eighth and Fourteenth Amendments

¶69. Thorson argues that in light of the previous issues, his sentence of death is the end result of an invalid penalty phase. Therefore, his execution would amount to an "arbitrary and capricious" killing in violation of the Eighth and Fourteenth Amendments to the United States Constitution as well as Article 3, Section 28 of the Mississippi Constitution. This argument amounts to a cumulative error argument. This Court has previously found no reversible errors.

If there is "no reversible error in any part, so there is no reversible error to the whole." ***McFee v. State***, 511 So.2d 130, 136 (Miss. 1987). *See also **Caston v. State***, 823 So.2d 473, 509 (Miss. 2002); ***Hicks v. State***, 812 So.2d 179, 195 (Miss. 2002). Therefore, this issue is without merit.

### XIII. Miss. Code Ann. § 99-19-105(3)(a) and the constitutional prohibition of an arbitrary death sentence

¶70.    Thorson next argues that in light of the totality of the errors alleged in the previous issues, his sentence is arbitrary and capricious. Again this Court has found no such error. If there is "no reversible error in any part, so there is no reversible error to the whole." ***McFee v. State***, 511 So.2d 130, 136 (Miss. 1987). *See also **Caston v. State***, 823 So.2d 473, 509 (Miss. 2002); ***Hicks v. State***, 812 So.2d 179, 195 (Miss. 2002). Therefore, we find this issue to be without merit.

### XIV. Proportionality of the death sentence[1]

¶71.    This Court must also review the death sentence in accordance with Miss. Code Ann. § 99-19-105(3) (Rev. 2000), which states:

> (3) With regard to the sentence, the court shall determine:
> (a) Whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor;
> (b) Whether the evidence supports the jury's or the judge's finding of a statutory aggravating circumstance as enumerated in Section 99-19-101;
> (c) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant; and
> (d) Should one or more of the aggravating circumstances be found invalid on appeal, the Mississippi Supreme Court shall

---

[1]This issue is typically discussed as the last issue. However, Thorson listed the issues in this order.

> determine whether the remaining aggravating circumstances are outweighed by the mitigating circumstances or whether the inclusion of any invalid circumstance was harmless error or both.

¶72. Under this analysis, there is no evidence supporting a finding that the death sentence was imposed under the influence of passion, prejudice or any other arbitrary factor. As previously discussed, the evidence supports the trial court's finding that the statutory aggravating factors of kidnapping, avoiding or preventing a lawful arrest and especially heinous, atrocious and cruel were proven beyond a reasonable doubt. Upon comparison to other factually similar cases where the death sentence was imposed, the sentence of death is not disproportionate in this case. Giving the equally heinous nature of the crime committed here, imposition of the death penalty on Thorson is neither excessive nor disproportionate in comparison to his crime. Having given individualized consideration to Thorson and the crime in the present case, this Court concludes that there is nothing about Thorson or his crime that would make the death penalty excessive or disproportionate in this case. See Appendix.

## XV. Suppression of Confession

¶73. "'Determining whether a confession is admissible is a finding of fact which is not disturbed unless the trial judge applied an incorrect legal standard, committed manifest error, or the decision was contrary to the overwhelming weight of the evidence.'" *Lee v. State*, 631 So.2d 824, 826 (Miss. 1994) (quoting *Balfour v. State*, 598 So.2d 731, 742 (Miss. 1992)); *Ricks v. State*, 611 So.2d 212, 214 (Miss. 1992). *See also* *Hunt v. State*, 687 So.2d 1154, 1159 (Miss. 1996).

¶74. Thorson was arrested on March 8, 1987. Counsel was appointed for Thorson on March 9, 1987. Without ever invoking his right to counsel, Thorson was questioned by the Harrison

County Sheriff's Department. After reading and signing a Waiver of Rights form, Thorson made a custodial statement on March 9, 1987, in which he confessed to the murder of Gloria McKinney.

¶75.    On May 10, 1999, Thorson filed a motion to suppress all his statements or confessions, whether written or oral, on the grounds that they were in violation of the Fifth, Sixth and Fourteenth Amendments because they "were made without counsel present, without adequate warnings of those rights, were the product of coercion and duress and were a result of a lack of understanding by Thorson of those rights." On September 22, 2000, Thorson filed another motion to suppress his confession pursuant to the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments, Article 3, §§ 14, 26 and 28 of the Mississippi Constitution and URCCC 6.03. The motion contended that Thorson was not adequately advised of his rights, the officers failed to respect Thorson's assertion of his rights, the statement was taken after Thorson's right to counsel had attached, the statement was not voluntarily made, and the statement was a product of an illegal arrest. Thorson also argued, in the alternative, that if the statement was allowed to be entered into evidence, the statement in its entirety should be admitted into evidence.

¶76.    These two motions were addressed at a hearing on September 25, 2000. The State informed the trial court that if the motion to suppress were going to be argued that the State would stand on the record made at the original motion to suppress hearing held prior to the original trial. The State also informed the court that it had no objection to the entire confession being presented to the jury. During the first trial, references to a sexual encounter and a racial slur were redacted from the statement. In initially ruling on the motion to suppress the confession, the trial court stated:

40

Okay. Now, I believe that as far as the motion to suppress is concerned, that the matter of the admission of the confession was presented to the Supreme Court on the appeal from the trial in September of 1988. That having been raised at that particular time, and the Court having heard extensive testimony concerning the -- those who were present at the time of the video confession and those who had any information concerning the preliminaries to it, the Court was of the opinion that the motion to suppress was not well taken and admitted the video confession with some limitation.

The Court takes the same position at this particular time, that the Court was correct in its ruling. And the Supreme Court, having reviewed the transcript in this case and having at first affirmed the conviction and sent it back for the purposes of a Batson challenge, and then having sent it back in totality because of the exclusion of certain jurors because of potentially their religious beliefs, that the Court can rely upon its ruling as being an appropriate ruling. Now, unless the defense has some authority to present to me to the contrary, which would indicate that I should rehear and revisit all of those matters, I'm going to stand on my ruling.

Thorson only requested that the trial court allow him the possibility of presenting Dr. George Thomas Tate, a psychologist who was presently evaluating Thorson, to testify on the issue of whether the confession should be suppressed. The trial court agreed that Thorson could supplement the record with Dr. Tate's testimony and written report. Although the trial court overruled the motion to suppress Thorson's confession, he stated that he would leave the matter open for reconsideration.

¶77. On December 20, 2000, the trial court conducted a hearing in which Thorson was allowed to put on the testimony of Dr. Tate. Dr. Tate testified that:

[Thorson] is not so impaired by mental disease or defect as to make him clearly incompetent to make a confession. Both his level of intelligence and his personality raise serious questions about taking the confession at face value, especially without careful consideration of other evidence. He's not truthful enough to be convicted on his word alone.

After Dr. Tate's testimony, the State informed the trial court that Dr. William G. Gasparrini, the psychologist who examined Thorson prior to the first trial, was available to testify. After

considering the matter and hearing arguments from counsel, the trial court stated that it would not be necessary for Dr. Gasparrini to testify. The trial court once again denied Thorson's motion to suppress his confession, finding that:

> Having heard Dr. George Tate's testimony here concerning his evaluation after two occasions of testing and evaluating Roger Thorson on June the 15th and September the 14th of this year, I am satisfied that he has an opinion concerning Mr. Thorson's mental state. I do not find that there is a great deal of conflict between his testimony and what Dr. Gasparrini evaluated Mr. Thorson on, excepting that it appears that he may have tested at a lower level in the year 2000 than he did in 1988 or '87, whichever the case was, when Dr. Gasparrini examined him.
>
> I feel that this is something that may very well be presented to the jury at the appropriate time for their consideration; that the Court is only required to rule on whether or not from a legal point of view the confession was freely and voluntarily given. And I've not changed my view on that. Now, whether there was an exaggeration in it, that will be up for the jury to decide. And also, this might very well be something that would be beneficial to the defendant in the event that we should reach a penalty phase. So my ruling will remain the same, in other words.

¶78. Thorson argues that his confession to the murder of Gloria McKinney should have been suppressed. In the original direct appeal of this case, Thorson challenged the admission of his confession on five separate grounds. This Court considered each ground and found them all to be without merit. *See **Thorson v. State***, 653 So. 2d at 885-89. Therefore, the State argues that this issue is barred by the doctrine of res judicata. The cases which are cited by the State all concern instances where a new sentencing hearing has been ordered. In the case sub judice a new trial was ordered. Therefore this issue is not res judicata. *See **Wilcher v. State***, 863 So.2d 719, 748 (Miss. 2003); ***Jordan v. State***, 786 So.2d 987, 1019-20 (Miss. 2001); ***Berry v. State***, 703 So.2d 269, 291 (Miss. 1997).

¶79.    However, the State correctly argues, in the alternative, that this claim is barred by the law of the case doctrine. In ***Jones v. State***, 517 So.2d 1295, 1297 (Miss. 1987), *vacated on other grounds*, 487 U.S. 1230, 108 S.Ct. 2891, 101 L.Ed.2d 925 (1988), the defendant argued on his second appeal that his confession was not freely and voluntarily given. This Court held that the claim was "covered in the first appeal and [was] decided adversely to the appellant. That decision constitutes the law of the case and the assignment[] [is] barred on the present appeal." 517 So. 2d at 1297 (citing ***Jones v. State***, 461 So.2d 686, 694, 695, 697 (Miss. 1984); ***Irving v. State***, 441 So.2d 846, 848 (Miss. 1983); ***Jordan v. State***, 464 So.2d 475, 477 (Miss. 1985)). The trial court properly denied Thorson's motion to suppress the confession. Therefore, we find this issue to be procedurally barred and without merit.

## XVI.    Jury selection

¶80.    Thorson next argues that the trial court erred in failing to require the State to present him with a full panel of jurors before he was required to exercise his peremptory challenges. In selecting the jury, both the State and Thorson had exercised challenges for cause through juror number 41, leaving a panel of twelve jurors. Therefore, Thorson was presented with a panel of twelve prospective jurors. Once counsel began exercising peremptory challenges, the trial court stated that he wanted to hear all peremptory challenges on the twelve prospective jurors before considering any challenges for cause for the jurors replacing those that were struck. Therefore, counsel continued exercising their peremptory challenges as to the original twelve panel of prospective jurors. Once completed, the trial court asked for challenges for cause for those jurors who had replaced those in the first panel removed by peremptory

challenges. The remainder of jury selection continued in this manner. At the conclusion of jury selection, Thorson had one peremptory challenge remaining.

¶81.    When the jury was finally selected, Thorson made no objection to the seating of the jury on this basis, or for any other reason. Thorson also did not object to the jury panel when they were sworn in at the beginning of the trial. This Court has continuously held that "a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter." *Bell v. State*, 725 So.2d 836, 844 (Miss. 1998) (citing *Hunter v. State*, 684 So.2d 625, 631 (Miss. 1996); *Myers v. State*, 565 So.2d 554, 557 (Miss. 1990); *Pickett v. State*, 443 So.2d 796, 799 (Miss. 1983). Since no objection was made, this issue is not properly preserved for review before this Court. *See Cannaday v. State*, 455 So.2d 713, 719 (Miss. 1984); *Ratliff v. State*, 313 So.2d 386 (Miss. 1975); *Pittman v. State*, 297 So.2d 888 (Miss. 1974); *Myers v. State*, 268 So.2d 353 (Miss. 1972). However, even if the issue were properly preserved for appeal, this assignment would be without merit.

¶82.    URCCC 4.05, which provides the guidelines for the jury selection process, states:

> A. Peremptory jury challenges shall be exercised as follows:
> 1. The court shall consider all challenges for cause before the parties are required to exercise peremptory challenges.
> 2. Next, the plaintiff shall tender to the defendant a full panel of accepted jurors having considered the jury in the order in which they appear, having exercised any peremptory challenges desired.
> 3. Next, the defendant shall go down the juror list accepted by the plaintiff and exercise any peremptory challenge(s) to that panel.
> 4. Once the defendant exercises peremptory challenges to the panel tendered, the plaintiff shall then be required to again tender to the defendant a full panel of accepted jurors.
> 5. *The above procedure shall be repeated until a full panel of jurors has been accepted by both sides.*
> 6. Once the jury panel is selected, alternate jurors shall be selected following the procedure set forth above for selecting the jury panel.

B. Constitutional challenges to the use of peremptory challenges shall be made at the time each panel is tendered.

(emphasis added). This rule requires that first challenges for cause be exercised until a full panel of twelve prospective jurors is selected. Once selected, peremptory challenges may be exercised. Then jurors are added to replace those struck to obtain a full panel of twelve jurors. This process is repeated until the jury panel is selected. This procedure was properly followed by the trial court in the instant case. Therefore, we find this issue to be without merit.

### XVII.  **Batson** challenges

¶83.    Relying on ***Batson v. Kentucky***, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed 2d 69 (1986), Thorson argues that his conviction must be reversed because the trial court erred in not permitting him an opportunity to rebut the State's race neutral reason for striking juror number 8. Thorson did not object when he was not given the opportunity to make such a rebuttal.

¶84.    We have stated:

> On appeal the trial court's fact-finding regarding the bases for peremptory strikes is accorded great deference, because it is largely based on credibility. ***Lockett v. State***, 517 So.2d 1346, 1349 (Miss. 1987). "'Great deference' has been defined in the ***Batson*** context as insulating from appellate reversal any trial findings which are not clearly erroneous." ***Id.*** at 1349-50 (citations omitted). If the defendant makes no rebuttal, the trial judge may base his decision solely on the reasons given by the State. ***Bush v. State***, 585 So.2d 1262, 1268 (Miss. 1991).

***Manning v. State***, 735 So.2d 323, 339 (Miss. 1999). "Additionally, the defendant is allowed to rebut the reasons which have been offered by the State. ***Bush v. State***, 585 So.2d 1262, 1268 (Miss. 1991). However, if the defendant offers no rebuttal, the trial court is forced to examine only the reasons given by the State. ***Id.***" ***Walker v. State***, 815 So.2d 1209, 1215 (Miss. 2002). Pursuant to case law, a defendant is allowed, or must request, to rebut the State's

race neutral reasons for striking a juror. However, in the instant case, Thorson did not request to rebut the reasons for the State's striking juror number 8.

¶85.    As previously stated, when the jury was selected, Thorson made no objection to the seating of the jury on this basis, or for any other reason. Thorson also did not object to the jury panel when they were sworn in at the beginning of the trial. This Court has continuously held that "a party who fails to object to the jury's composition before it is empaneled waives any right to complain thereafter." **Bell v. State**, 725 So.2d 836, 844 (Miss. 1998) (citing **Hunter v. State**, 684 So.2d 625, 631 (Miss. 1996); **Myers v. State**, 565 So.2d 554, 557 (Miss. 1990); **Pickett v. State**, 443 So.2d 796, 799 (Miss. 1983). Since no objection was made, this issue is not properly preserved for review before this Court. *See* **Cannaday v. State**, 455 So.2d 713, 719 (Miss. 1984); **Ratliff v. State**, 313 So.2d 386 (Miss. 1975); **Pittman v. State**, 297 So.2d 888 (Miss. 1974); **Myers v. State**, 268 So.2d 353 (Miss. 1972). However, even if the issue was properly preserved for appeal, this assignment would be without merit.

¶86.    When asked to declare its race neutral reasoning for striking juror number 8, the State replied:

> Two reasons, Your Honor. First, he stated he had some concerns; he was trying to leave to go to something that he couldn't miss for work on Friday. He might could leave Saturday, but he'd have to fly. I don't know if his mind would be on the case.
> And also, Your Honor, he stated, when asked directly about cases involving family members that were victimized, he stated he had a sister that was killed and he was not satisfied with the outcome of the prosecution, and that's why I'm concerned about it.

The trial court then accepted the reasons given as race neutral.Thorson failed to offer any rebuttal during jury selection, and Thorson fails to offer this Court any reason as to why the

46

reasons stated by the State should not be considered race neutral. Finding the reasons given by the State to be race neutral, we find this claim to be without merit.

### XVIII. State's Exhibit 1

¶87.     Thorson next claims that the trial court erred in admitting State's Exhibit 1, which is a photograph depicting the victim's head, shoulder, mouth and throat. Thorson argues that the picture was prejudicial and lacked any probative value because the State's only purpose in submitting the picture was to inflame the jury with an image of the victim "gagged, slashed and lying barebreasted on an autopsy table with a lifeless stare." Thorson objected to this picture being admitted into evidence. State's Exhibit 4 was admitted to show the jury the extent of the victim's neck wound. State's Exhibit 2 was also admitted into evidence which portrayed the victim's body as it was found inside of her car. Therefore, Thorson argues that admitting SE-1 was repetitious in that the victim had already been identified from the picture of her car and the injuries were identified in SE-4. The State argued that SE-1 was admitted purely for visual identification purposes. Thorson then stated that he would stipulate that the decedent in the matter was Gloria McKinney. After hearing arguments from both sides, the trial court determined that the State was entitled to prove the identity of the victim; therefore, he allowed SE-1 to be admitted to the jury.

¶88.     The admissibility of photographs rests within the sound discretion of the trial court. *Gray v. State*, 728 So.2d at 57. This Court will not overrule such admissibility unless there is proof of an abuse of discretion. *Id.* "The discretion of the trial judge runs toward almost unlimited admissibility regardless of the gruesomeness, repetitiveness, and the extenuation of probative value." *Simmons v. State*, 805 So.2d 452, 485 (Miss. 2001) (citing *Woodward v.*

47

*State*, 726 So.2d 524, 535 (Miss. 1997)). "The mere fact that the defense is willing to stipulate what the prosecution hopes to prove by admitting the photographs into evidence does not bar their admissibility." *Id.* (citing *Hughes v. State*, 735 So.2d 238, 263 (Miss. 1999)). This Court has also continuously held that autopsy photographs are admissible only if they possess probative value. *See Puckett v. State*, 737 So.2d 322, 338 (Miss. 1999); *Noe v. State*, 616 So.2d 298 (Miss.1993). However, SE-1 depicts the victim's body before the autopsy had taken place. The Comment to M.R.E. 401 states that if there is any probative value, the rule favors admission of the evidence. Therefore, we find that SE-1 had probative value in that it was the only picture admitted by the State which clearly identified the victim as Gloria McKinney. The trial court neither erred in refusing to accept Thorson's stipulation nor in admitting State's Exhibit 1. This issue is without merit.

### XIX. Expert funds for social psychologist

¶89.    Thorson next argues that the trial court erred in denying him funds to hire a social psychologist who was reportedly an expert in the areas of police interrogation and coerced confessions. In Issue XV, we found that the trial court properly denied Thorson's motion to suppress his confession. Thorson contends that the expert was needed to testify that the confession was false. Thorson first requested, during an ex parte hearing, that the court allow him special funds to retain Dr. Richard Leo, a professor at the University of California-Irvine. Dr. Leo specialized in criminology and social psychology and would have testified that Thorson's confession was a police-induced falsified confession. The trial court overruled the motion stating there was no authority in this State for such testimony. The court further held:

This is not a case of a written statement being made. This is a case of where it was video recorded. The jury will have the opportunity to view the video, and can make -- draw its own conclusions from that video, as perhaps the jury did in the other trial. And I just don't think that it would be of any benefit, certainly any admissible evidence benefit, so it's overruled.

This issue was raised again with Thorson's expert Dr. George Tate. Thorson argued that because he was not allowed a separate social psychologist, his psychologist, Dr. Tate, should be allowed to testify as to the coerced confession. The following exchange took place between the trial court and Thorson's counsel:

THE COURT: There is no doubt that the defendant has a right to pursue his theory of defense. The Court has previously ruled, after extensive hearings, and prior to the first trial of this case, that the confession that was given is admissible. It's still a question for the jury to decide from that confession and with the other evidence as to whether or not they believe that this was a coerced confession. But there has to be some evidence to support that other than just to say, well, we can raise the coercion. And then through a psychologist or a psychiatrist, whichever the case that the doctor is, to have him come in and bolster some defense that has been raised as to coercion on the confession without the defendant testifying himself. And that's the problem that I have here, that you've got the ability, you've got a psychiatrist or a doctor who has examined Mr. Thorson in private, and he comes up with these theories. Yet there is nothing in there to indicate, that I remember in the report, that Mr. Thorson has given any information at any time even to this psychiatrist that the matters in the confession are not correct. And that's where I have a problem with saying that this doctor can come in and conclude from an examination that Mr. Thorson was untruthful in the confession, and that he was coerced in to giving this confession. Now, certainly he can testify as to his findings and conclusions as to his mental aptitude, his level of intelligence, and that -- He can say that a person of this aptitude or intelligence can be influenced, but he certainly can't draw any conclusion that he was indeed influenced.

MR. SMITH:        That's all we're asking.

THE COURT:        That follows along in my view with certainly expert testimony being given, but certainly not to draw any conclusions. And particularly, as I heard a moment ago, that perhaps that he is going to testify that in his opinion, that the issue of truthfulness would be such that he should not be convicted on his confession alone. Now, that I can't allow and will not allow, because that's drawing a conclusion that the jury is left to decide without him interloping into it.

MR. SMITH:        Yes, sir.

THE COURT:        Now, am I --

MR. SMITH:        Yes, sir.

THE COURT:        Y'all understand what I'm saying?

MR. SMITH:        And I think we're kind -- and I believe -- I certainly understand what the Court is saying. And I think Mr. Ward made the statement that Dr. Tate was going to testify that the statement was not a truthful statement. Well, certainly we don't intend that he's going to testify to that. We do intend for him to testify regarding his abilities, the fact that he's easily influenced and those type of things as reflected through the information he studied in his interview with Roger, not -- not that –

THE COURT:        I don't think that he can testify that Roger is -- draw the conclusion that Roger is easily influenced. I think that he can give his opinion based upon his experience that a person of this level of intelligence, that they have a tendency to be easily influenced; --

MR. SMITH:        Yes, sir.

THE COURT:        -- not draw the conclusion that Roger Thorson is.

MR. SMITH:        Correct.  I stand corrected on that, Judge. But that's where we -- I mean, that's where we were headed with him and are headed with him, and I agree he cannot say this was not a

50

|  |  |
|---|---|
| | truthful statement. He cannot say that, and I agree with the Court. We don't intend to try to offer that. |
| THE COURT: | So based on your motion itself, I will overrule the motion to an extent, that they are at liberty to call the doctor in their case in chief, -- |
| MR. WARD: | Yes, sir. |
| THE COURT: | -- and that he can certainly testify as to his findings on his examination and his evaluation of the intelligence level; and the personality, whatever he wants to draw from that, as to the personality that Mr. Thorson has. But he can't draw any conclusions as to the truthfulness of the statement itself. |

During the trial, Thorson attempted to make a proffer as to Dr. Tate's testimony regarding Thorson's alleged coerced confession. Thorson stated that Dr. Tate would testify during the guilt phase "as to his opinion as to whether or not the confession that's been admitted into evidence. . . was in fact a voluntary statement or one that was coerced by law enforcement." Because this testimony was to be offered before Thorson took the stand, the trial court found that there would be "absolutely no testimony or evidence to support" such a theory of coercion. The trial court held that before Thorson could offer Dr. Tate's testimony as to the alleged coercion, Thorson would have to offer some evidence to support the coercion. However, Thorson made no proffer by calling Dr. Tate to testify outside the presence of the jury. Dr. Tate was only questioned about Thorson's intelligence level, childhood, medication and adaptation to prison life. The only testimony during the trial relating to coercion and the confession being false came from Thorson's testimony. We have stated:

"The trial court's decision on a motion for funding for consultants or investigators for an indigent defendant is reviewed for abuse of discretion." *Grayson v. State*, 806 So.2d 241, 254 (Miss. 2001) (citing *Hansen v. State*,

592 So.2d 114, 125 (Miss. 1991)). The State does not have a constitutional obligation to provide indigent defendants with the costs of expert assistance upon every demand. *Johnson v. State*, 476 So.2d 1195, 1202 (Miss. 1985). However, this Court does recognize that expert assistance should be paid for in certain cases and will address the need for support on a case-by-case basis to determine whether a defendant is prejudiced by the denial of expert assistance to the extent that he or she is denied a fair trial. *Id.* In determining whether a defendant was denied a fair trial because of failure to appoint or allow funds for an expert, some of the factors to consider are whether and to what degree the defendant had access to the State's experts, whether the defendant had the opportunity to cross-examine those experts, and lack of prejudice or incompetence of the State's experts. *Fisher v. City of Eupora*, 587 So.2d 878, 883 (Miss. 1991). This Court has also considered to what extent the State's case depends upon the State's expert, *Tubbs v. State*, 402 So.2d 830, 836 (Miss. 1981), and the risk of error in resolving the issue for which the expert is requested. *Johnson v. State*, 529 So.2d 577, 592 (Miss. 1988).

*Townsend v. State*, 847 So.2d 825, 829 (Miss. 2003). The Fifth Circuit has held that:

Moore's claim of entitlement to a mitigation expert fails under the *Yohey* explication of a defendant's right to non-psychiatric experts. As the *Yohey* court explained, "[a]n indigent defendant requesting non-psychiatric experts must demonstrate something more than a mere possibility of assistance from a requested expert." *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993). Moore does not make such a showing.

*Moore v. Johnson*, 225 F.3d 495, 503 (5th Cir. 2000). In reviewing the record, we can find no instance, other than to say the jury must be educated about the possibility of false confessions, of a substantial need for such an expert. Thorson was only able to show the trial court that there was a mere possibility of assistance from Dr. Leo. As to experts in the field of false confessions, several jurisdictions have held that this type of testimony, which essentially goes to the credibility of a witness, is not an appropriate subject for an expert witness, but should be left to the province of the jury. *See United States v. Adams* 271 F.3d 1236 (10th Cir. 2001); *State v. Tellier*, 526 A.2d 941 (Me. 1987); *State v. Ritt*, 599 N.W.2d 802 (Minn. 1999); *State*

*v. Davis*, 32 S.W.3d 603, 608 (Mo. Ct. App. 2000). We can find no evidence that the trial court abused its discretion in denying funds to hire Dr. Leo. The trial court also did not err in finding that such testimony would not be properly submitted to the jury without a proper foundation. Therefore, this issue is without merit.

### XX. Presence of counsel during court-ordered mental evaluation

¶90.    Thorson next argues that the trial court erred in refusing to allow defense counsel to be present during the court ordered mental evaluation by Dr. Henry Maggio. In *Estelle v. Smith*, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981), the Supreme Court discussed both the Fifth and Sixth Amendments as relating to the claim of mental health professional examinations. As to the Fifth Amendment, the Supreme Court held that a defendant must be given warnings similar to *Miranda* warnings prior to the examination. *Id.* at 469. In deciding the Sixth Amendment aspect, the Supreme Court held that once counsel had been appointed, counsel must be notified that the defendant will be examined in order to consult with the defendant prior to the exam. *Id.* at 470-71. In a footnote, the Supreme Court discussed the issue of whether counsel had the right to be present during the exam.

> Because psychiatric examinations of the type at issue here are conducted after adversary proceedings have been instituted, we are not concerned in this case with the limited right to the appointment and presence of counsel recognized as a Fifth Amendment safeguard in *Miranda v. Arizona*, 384 U.S. 436, 471-473, 86 S.Ct. 1602, 1626-1627, 16 L.Ed.2d 694 (1966). See *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378. Rather, the issue before us is whether a defendant's Sixth Amendment right to the assistance of counsel is abridged when the defendant is not given prior opportunity to consult with counsel about his participation in the psychiatric examination. But cf. n. 15, *infra*.
> Respondent does not assert, and the Court of Appeals did not find, any constitutional right to have counsel actually present during the examination. In fact, the Court of Appeals recognized that "an attorney present during the

psychiatric interview could contribute little and might seriously disrupt the examination." 602 F.2d at 708. Cf. **Thornton v. Corcoran**, 132 U.S.App.D.C. 232, 242, 248, 407 F.2d 695, 705, 711 (1969) (opinion concurring in part and dissenting in part).

*Estelle*, 451 U.S. at 471 n.14. The Fifth Circuit has continuously held that there is no right to counsel during the actual testing and examination of a criminal defendant. **Hernandez v. Johnson**, 248 F.3d 344 (5th Cir. 2001); **United States v. Bondurant**, 689 F.2d 1246 (5th Cir. 1982); **Gholson v. Estelle**, 675 F.2d 734 (5th Cir. 1982); **Estelle v. Smith**, 602 F.2d 694 (5th Cir. 1979); **United States v. Cohen**, 530 F.2d 43 (5th Cir. 1976). Therefore, this Court now adopts the rule found in **Estelle v. Smith** that there is no constitutional right for counsel to be present during a mental evaluation. Finding that there is no such constitutional right, this issue is without merit.

### XXI. Hearsay objections regarding the testimony of Richard Isham

¶91. Thorson next argues that the trial court erred in excluding, as hearsay, answers to questions during Thorson's testimony regarding threats made by Richard Isham. Thorson argues that during the following testimony, the trial court improperly sustained two objections on hearsay grounds:

KOENIG: Prior to your being formally charged with capital murder, was anyone allowed to come in and talk to you other than law enforcement?

THORSON: Richard Isham was allowed to come and talk to me in one of the offices on the early morning of March 8th.

\*\*\*\*\*\*

KOENIG: Without saying at this point what, if anything, Mr. Isham may have said to you, did Mr. Isham have any influence over your decision to make a statement in this case?

THORSON: Yes, ma'am.

KOENIG: Why?

WARD: Objection, Your Honor.

COURT: Sustained. The obvious would be hearsay. The jury will disregard that remark and the question.

KOENIG: Did you - - Again, without saying what Mr. Isham said, if, in fact, he said anything, did you feel threatened by Mr. Isham's presence?

WARD: Objection, Your Honor.

COURT: Sustained. Counsel, I've cautioned you.

Thorson argues that he was trying to prove what impact, if any, "a visit from Richard Isham immediately preceding Mr. Thorson's custodial statement had in convincing Mr. Thorson to provide a custodial statement to the police. However, the following exchange occurred only minutes later:

KOENIG: Roger, what did you do as a result of the jailhouse visit by Richard Isham?

WARD: Objection, Your Honor.

KOENIG: If anything?

COURT: That's a pretty broad question, Counsel. I will allow him to answer subject to being stricken and subject to my previous admonition, because this is not a fishing expedition to attempt to get an answer which cannot come in directly.

Now, if you want to ask the question again, ask it again.

KOENIG: What action, if any, Mr. Thorson, did you take after being held from March 7th to March 9th, as a result of your questioning, interrogation and your jailhouse encounter with Richard Isham?

WARD: Again, we object, Your Honor.

COURT: I'll let him answer, if he understands the question, what's being asked for.

THORSON: Because of the threats on Gloria's two girls.

COURT: I sustain the objection that's been made, and the jury will disregard that. That has to come from some form of hearsay.

Counsel, I caution you again.

KOENIG: We're not asking why. We're asking what did you do, Mr. Thorson.

THORSON: I took responsibility for what was said about Gloria McKinney being dead.

55

¶92.    In *Peterson v. State*, 671 So.2d 647 (Miss. 1996), this Court pronounced the standard

of review for the admissibility of evidence as follows:

> Under the Supreme Court's standard of review, the admissibility of evidence
> rests within the discretion of the trial court. However, this Court must also
> determine whether the trial court employed the proper legal standards in its fact
> findings governing evidence admissibility. If in fact the trial court has
> incorrectly perceived the applicable legal standard in its fact findings, the Court
> applies a substantially broader standard of review. *However, a denial of a
> substantial right of the defendant must have been affected by the court's
> evidentiary ruling.* Furthermore, the trial court's discretion must be exercised
> within the scope of the Mississippi Rules of Evidence and reversal will be
> appropriate only when an abuse of discretion resulting in prejudice to the
> accused occurs.

*Peterson*, 671 So.2d at 655-56 (internal citations omitted & emphasis added). *See also*

*Clemons v. State*, 732 So.2d 883, 887-88 (Miss. 1999). Thorson argues that had he been

allowed to testify, he would have stated that Isham had a coercive influence over him. The trial

court's ruling was not prejudicial to Thorson, as it properly sustained the State's hearsay

objection. However, as evidenced from the trial transcript, Thorson was able to testify that as

a result of a jailhouse visit from Isham, he felt compelled to take responsibility for the death

of Gloria McKinney. Therefore, this issue is without merit.

### XXII. Hearsay objections regarding the testimony of Barbara Stanley

¶93.    Thorson argues that the trial court also erred in sustaining a hearsay objection to the

testimony of Barbara Stanley. Stanley was an employee of the Biloxi Police Department

(BPD). Stanley testified that on March 5, 1987, she wrote a report concerning a missing

person. Stanley identified the report, but she could not remember the individual who filed the

report. Defense counsel asked Stanley what the report reflected about a possible burglary at

McKinney's home, and the State objected on the ground of hearsay. The trial court excused the

56

jury and heard arguments from counsel. Thorson argued the report fell under the hearsay

exceptions of regularly conducted activity and public records. *See* M.R.E. 803(6)&(8). The

State argued that the conclusions stated in the report were hearsay and should not be admitted.

Thorson responded that the report was being offered not for the truth it asserted but to

determine if any follow-up investigation had been conducted. The State further argued that the

report constituted double hearsay. The State offered that such public documents could only be

admitted to prove facts observed by officers, not hearsay statements of persons interviewed

by the officers. The trial court sustained the State's objection and allowed Thorson to proffer

testimony of Stanley. The trial court also held that Thorson could question the officers who

investigated the case, which would eliminate the problem of double hearsay. However, the two

investigating officers who were called to testify by Thorson were not questioned about the

burglary allegation or if such an allegation was further investigated. We have stated:

> A party must do more than simply show some technical error has occurred
> before he will be entitled to a reversal on the exclusion or admission of
> evidence; there must be some showing of prejudice. "[F]or a case to be reversed
> on the admission or exclusion of evidence, it must result in prejudice and harm
> or adversely affect a substantial right of a party." ***Terrain Enter., Inc. v.***
> ***Mockbee***, 654 So.2d 1122, 1131 (Miss. 1995) (citing ***Hansen v. State***, 592
> So.2d 114 (Miss. 1991)); ***Russell v. State***, 607 So.2d 1107, 1114 (Miss. 1992);
> Miss. R. Evid. 103(a).

***Pham v. State***, 716 So.2d 1100, 1102 (Miss. 1998). Thorson has failed to demonstrate to this

Court any prejudice he suffered as a result of the trial court's exclusion of this hearsay

testimony. The trial court offered Thorson another avenue to elicit such testimony; however,

Thorson did not take advantage. Therefore, the trial court did not abuse its discretion in

refusing to allow Stanley to testify regarding the missing person's report. This issue is without merit.

### XXIII. Hearsay objections regarding the testimony of Officer Greg Broussard

¶94. Thorson next alleges that the trial court erred in sustaining an objection to his testifying to what Officer Greg Broussard said to him during the interrogation. During his testimony when asked about Officer Broussard, Thorson answered, "He was the one who was pushing me into the filing cabinets, yelling and screaming at me, holding me up against the wall by the sides of my shirt, and telling me the things that had been done to Gloria McKenzie (sic), and saying 'We know you did this. We just want to know why.'" The State objected to what the officer said, and the trial court sustained the objection. The State argues that the objection was made because the answer was unresponsive to the question. Thorson was asked how he was treated and then exceeded the scope of the question by stating what the officer said. The State further argues that even if the statement was an exception the hearsay rule, the exact answer was given by Thorson previously when he was asked if he was mistreated during the interrogation.

¶95. Thorson correctly argues that a  statement is not hearsay if it is offered merely to show its effect on someone. *See **Knight v. State***, 601 So.2d 403, 406 (Miss. 1992). In ***Knight***, the trial court excluded as hearsay the statement of a witness that another person had warned the defendant that he had better leave the scene. We held that "[t]his statement, when offered for its effect on Knight, is not offered 'to prove the truth of the matter asserted.' Rather it is offered for the fact that it was said. It does not fit the definition of hearsay." ***Id.*** at 406.

¶96. "A criminal defendant is not entitled to a perfect trial, only a fair trial." ***McGilberry v. State***, 741 So.2d 894, 924 (Miss. 1999). As previously stated, actual prejudice must be shown

in order for this Court to reverse on the exclusion of evidence. This exact answer was given by Thorson when he was questioned regarding his interrogation. Therefore, this information was already before the jury. Therefore, at most it was harmless error for the trial court to sustain the State's objection. This issue is without merit.

### XXIV. Cross-examination of Patrick Brossett

¶97.    Thorson next argues that the trial court abused his discretion in not allowing him to impeach Patrick Brossett, his own witness, with a prior conviction during direct examination. Thorson also argues that the trial court prevented him from approaching the bench immediately after the ruling; therefore, he was unable to make a proffer of the witness's testimony. Concerning the refusal to make a proffer, once the witness was released, the trial court released the jury and stated that he should have allowed Thorson the opportunity to make a record as to Brossett's criminal history. Thorson was able to state into the record that Brossett had been convicted of robbery and released from Parchman in 1986.

¶98.    Thorson contends that Brossett was a hostile witness; however, he was never designated as such at trial. The State points out that Brossett's testimony was so insignificant that the State did not cross-examine him. Thorson has failed to show actual prejudice in the exclusion of this evidence. Thorson only wanted to ask the question because Brossett had recently been released from Parchman. This issue is without merit.

### XXV. Prohibited testimony of Richard Isham

¶99.    Thorson next argues that the trial court erred in sustaining an objection to a question asked of Richard Isham regarding threats made against McKinney's children during his visit with Thorson. Isham was asked during direct examination if he made any threats against

Thorson. He denied making any such threats. Isham was then asked if he had made any threats against Thorson or Gloria McKinney's children. The State objected to the question as asked and answered. Thorson argued that this was a different question, but the trial court sustained the objection. Thorson made no further attempt to ask Isham if he had made any threats against McKinney's children. During Thorson's testimony, the following exchange took place:

KOENIG: Did you, in fact, have anything to do with the disappearance of Ms. McKinney?
THORSON: No, ma'am; I did not.
KOENIG: Why would you tell authorities that you did?
THORSON: Because of the threats on her two young girls.

Immediately following this exchange, Thorson testified about Isham's visit and taking responsibility for McKinney's death. While the objections to what Thorson wanted Isham to say were sustained, the transcript in context shows that the testimony was elicited. Thorson was trying to prove that Isham threatened him and McKinney's children; and therefore, he confessed to the murder. However, his confession came almost thirty-six hours after his visit with Isham when the police presented Thorson with evidence that only the killer of McKinney would have. When Thorson was shown the knife used to cut McKinney's throat, he stated, "Well, I guess you know the rest of the story."

¶100. Thorson was allowed to present his theory of the case as to why he confessed to the murder and why that confession was false. Therefore, any error committed by the trial court in excluding testimony was harmless error. This issue is without merit.

### XXVI. Jury Instruction D-2

¶101. Thorson next argues that the trial court erred in refusing to grant Jury Instruction D-2, which stated:

The Court instructs the Jury that if there be a fact or circumstance in this case susceptible of two interpretations, one favorable and the other unfavorable to ROGER ERIC THORSON, when the Jury has considered such fact or circumstance with all the other evidence, if there is reasonable doubt as to the correct interpretation, you the Jury, must resolve such doubt in favor of ROGER ERIC THORSON, and place upon such fact or circumstance the interpretation most favorable to him.

The State objected to this instruction stating that the instruction was a circumstantial evidence instruction and the case was a direct evidence case. The trial court agreed and refused the instruction. Thorson argues that this instruction is not a circumstantial evidence instruction, but is a burden-of-proof instruction which would have explained to the jury if conflicting inferences are equally probable, the party with the burden must prove the loss.

¶102. We addressed this exact instruction in *Conley v. State*, 790 So.2d 773, 791-92 (Miss. 2001) and *Petti v. State*, 666 So.2d 754, 756-57 (Miss. 1995). In *Petti* this Court affirmed the trial court's refusal to grant the jury instruction and stated that we have "held on numerous occasions that it is only in cases consisting entirely of circumstantial evidence that an instruction must be given which requires the jury to resolve, in favor of the accused, doubt over circumstances susceptible of two interpretations ." *Id.* at 757 (citing *Medley v. State*, 600 So.2d 957 (Miss. 1992); *Barnes v. State*, 532 So.2d 1231 (Miss. 1988)). This Court has held that if a defendant makes an admission on a significant element of the offense, the admission constitutes direct evidence. *See Taylor v. State*, 672 So. 2d 1246, 1270 (Miss. 1995); *Mack v. State*, 481 So.2d 793 (Miss. 1985); *Anderson v. State*, 246 Miss. 821, 828, 152 So.2d 702 (1963). In the instant case, Thorson's confession was introduced into evidence. Therefore, the trial court did not err in refusing to grant Jury Instruction D-2. This issue is without merit.

**XXVII. Jury Instruction D-16**

¶103. Thorson next argues that the trial court erred in refusing to grant Jury Instruction D-16, a mere suspicion instruction, during the culpability phase. The State objected to the instruction as repetitious to instructions already granted by the trial court. The trial court agreed and refused the instruction. Jury Instruction D-16 reads:

> The Court instructs the jury that under the law you do not have the right to convict upon mere suspicion, regardless of how strong that suspicion might be. You may not convict just because there may be a preponderance of the evidence against ROGER ERIC THORSON or just because there may be a reason to suspect that he is guilty.
> Suspicion, no matter how strong or convincing, never rises to the dignity of proof beyond a reasonable doubt. Before you may find ROGER ERIC THORSON guilty, you must be convinced solely upon the evidence presented during this trial that he is guilty beyond a reasonable doubt.

The jury in the instance case was properly instructed that they had to find Thorson guilty beyond a reasonable doubt. Jury Instruction D-1 stated, "Mere probability of guilty will never warrant you in convicting the Accused. . . . You might be able to say that you believe him to be guilty, and yet, if you are not able to say on your oaths, beyond a reasonable doubt, that he is guilty, it is your sworn duty to find [Thorson] "Not Guilty." Jury Instruction C-3 informed the jury that "[b]efore you can return a verdict of guilty, the State must prove beyond a reasonable doubt that the Defendant is guilty." Jury Instruction S-2 cautioned the jury that if the State failed to prove any element beyond a reasonable doubt, the jury must return a verdict of not guilty. Jury Instructions S-14 and D-13A also informed the jury as to the burden of proof which was required to find Thorson guilty of capital murder. Therefore, the trial court did not abuse its discretion in refusing to grant Jury Instruction D-16 on the grounds that it was repetitious. This issue is without merit.

### XXVIII. Jury Instruction D-15

62

¶104. Thorson next claims that the trial court erred in refusing to grant Jury Instruction D-15, which read:

> The Court instructs the jury that the testimony of a witness or witnesses may be discredited or impeached by showing that on a prior occasion they made a statement which is inconsistent with or contradictory to their testimony in this case. In order to have this effect, the inconsistent or contradictory prior statement must involve a matter which is material to the issues in this case. The prior statement of the witness or witnesses can be considered by you only for the purpose of determining the weight of believability that you give to the testimony of the witness or witnesses that made them. You may not consider the prior statement as proving the guilt or innocence of the Defendant.

The trial court refused the instruction after Thorson requested it be refused. Thorson conceded that during the examination of the witnesses, he had attempted to impeach witnesses but had been unable to do so. Therefore, an impeachment instruction would be confusing. The trial court agreed that such an instruction would be confusing and refused the instruction in an attempt to remain consistent. The State also objected to the instruction as repetitious. After reviewing the record, we find that Thorson did not use any prior statements to impeach any witnesses. Therefore, the trial court did not abuse its discretion in refusing to grant Jury Instruction D-15.

### XXIX. Prosecutorial misconduct

¶105. Thorson next contends that prosecutorial misconduct occurred during his cross-examination during the guilty phase of the trial and during the cross-examination of his mother, Juanita Thorson, during the sentencing phase of the trial.

### A. Cross-examination of Thorson

¶106. Thorson first contends that it was prosecutorial misconduct for the State to ask him questions that introduced racial matters into the trial after the trial court had admitted

Thorson's confession in its entirety with the exception of a racial reference. Thorson contends the State asked four questions directly related to the reference in the statement. The State questioned Thorson as to why he had sex with McKinney and whether McKinney was dating a black man at the time of her murder.

¶107. The State argues that Thorson failed to object to any of these questions. This Court has repeatedly held that "[i]f no contemporaneous objection is made, the error, if any, is waived. This rule's applicability is not diminished in a capital case." *Foster v. State*, 639 So.2d 1263, 1270 (Miss. 1994). *See also* *Walker v. State*, 671 So.2d 581, 597 (Miss. 1995). Therefore, Thorson's failure to object at trial bars this claim from consideration on appeal. Notwithstanding the procedural bar, this issue is without merit.

¶108. Before trial began, Thorson moved to suppress his statement. However, Thorson stated that if the confession was admitted, he would not object to the racial slur being eliminated. Therefore, the only thing excluded from the confession was a single racial slur made by Thorson during his video taped confession. The trial court did not delete the portions of the confession which discussed Thorson's remarks about why he had sex with McKinney. Thorson's statements regarding McKinney's dating a black man were also found in statements made to Dr. Gasparrini. When Thorson was questioned about his conversations with Dr. Gasparrini, he stated he did not remember what was said during the interveiw. Therefore, there was a basis for asking questions of Thorson when he claimed lack of memory of what he told Dr. Gasparrini during the interviews.

¶109. Thorson specifically requested that the entire confession be played to the jury, minus one racial slur. Included in that confession were references to Thorson and McKinney having

sex. Therefore, there was no prosecutorial misconduct in asking these questions of Thorson during cross-examination. This issue is without merit.

### B. Cross-examination of Juanita Thorson

¶110. As to the cross-examination of Thorson's mother, Thorson claims that there was prosecutorial misconduct which amounted to error under *Caldwell v. Mississippi*, 472 U.S. 320, 329, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). A *Caldwell* error occurs when the prosecution misleads the jury into believing that the responsibility for making the ultimate death penalty decision belongs to some other party. *Id.* The following exchange occurred during cross-examination of Juanita Thorson:

| WARD: | Ma'am, you have asked this jury not to kill your son. |
| THORSON: | Right. |
| WARD: | Do you understand, ma'am, that that's not what they would be doing? They would just be rendering a decision based on what your son had done? |
| SMITH: | I would object to that, Your Honor. |
| COURT: | Sustained. |
| SMITH: | He's arguing the case. |
| COURT: | Sustained. |

¶111. First, the trial court sustained the objection made by Thorson; therefore, there is no error. "This court has held that where an objection to a question is sustained and no request is made that the jury be instructed to disregard the question, there is no error." *Caston v. State*, 823 So.2d 473, 494 (Miss. 2002). *See also Gardner v. State*, 455 So.2d 796, 800 (Miss. 1984). Also the objection made at trial is different from the objection Thorson is now making on appeal. At trial Thorson objected to the State arguing the case. Now Thorson is arguing a *Caldwell* violation. "[A]n objection on one or more specific grounds constitutes a waiver of all other grounds." *Doss v. State*, 709 So.2d 369, 378 (Miss. 1996) (citing *Conner v. State*,

632 So.2d 1239, 1255 (Miss. 1993)). *See also **Randall v. State***, 806 So.2d 185, 212-13 (Miss. 2001). Notwithstanding procedural bar, this issue is without merit.

¶112.  In *Caldwell*, the Supreme Court held that an argument made to the jury that their verdict at trial was not final because it was reviewable on appeal diminished the jury's responsibility in making the determination as to what punishment Caldwell should suffer. 472 U.S. at 329. In the instant case, the State asked Juanita Thorson if she understood that the jury would not personally carry out the punishment of death, but would render a decision on her son's action. This comment did not mislead the jury as to the importance of the decision which it faced. Therefore, this issue, too, is without merit.

### XXX. Cumulative Error as to Federal Law

¶113.  Thorson next argues that if this Court concludes that the claims raised do not rise to the level of reversible error alone, pursuant to federal constitutional law, Thorson is entitled to relief based on cumulative error. The Fifth Circuit has held that:

> In ***Derden v. McNeel***, 978 F.2d 1453, 1454 (5th Cir.1992), *cert. denied,* 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993), the en banc court recognized an independent claim based on cumulative error only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.'" *Id.*, quoting ***Cupp v. Naughten***, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised. *Derden*, 978 F.2d at 1461.

***Westley v. Johnson***, 83 F.3d 714, 726 (5th Cir. 1996). Therefore, this issue is without merit.

### XXXI. Cumulative Error as to State Law

¶114. Thorson next argues that if this Court concludes that the claims raised do not rise to the level of reversible error alone, pursuant to state constitutional law, Thorson is entitled to relief based on cumulative error. This Court has previously found no reversible errors. If there is "no reversible error in any part, so there is no reversible error to the whole." *McFee v. State*, 511 So.2d 130, 136 (Miss. 1987). *See also* **Caston v. State**, 823 So.2d 473, 509 (Miss. 2002); **Hicks v. State**, 812 So.2d 179, 195 (Miss. 2002). Therefore, this issue is without merit.

## XXXII. Constitutionality of Miss. Code Ann. § 99-19-101

¶115. Thorson next contends that the Mississippi capital sentencing mechanism violates his Eighth and Fourteenth Amendment rights and is, therefore, unconstitutional. Miss. Code Ann. § 99-19-101 has already been determined to be constitutional in numerous cases. **Edwards v. State**, 737 So.2d 275, 307 (Miss. 1999); **Billiot v. State**, 454 So.2d 445, 464 (Miss. 1984); **Coleman v. State**, 378 So.2d 640, 647 (Miss. 1979); **Edwards v. State**, 441 So.2d 84, 90 (Miss. 1983). Therefore, this issue is without merit.

## XXXIII. Weight of the Evidence

¶116. Thorson finally argues that his conviction was against the overwhelming evidence introduced at trial. He contends the trial court erred in denying his motion for directed verdict, refusing to grant a peremptory instruction as to guilt and denying his motion for new trial. Our standard of review regarding claims that a jury's verdict is against the overwhelming weight of the evidence is as follows:

> In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand

would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.

*Pruitt v. State*, 807 So.2d 1236, 1243 (Miss. 2002) (citing *Dudley v. State*, 719 So.2d 180, 182 (Miss. 1998)). In *Maiben v. State*, 405 So.2d 87, 88 (Miss. 1981), this Court stated:

We have held in numerous cases that the jury is the sole judge of the credibility of the witnesses and the weight to be attached to their testimony. We have further said that we will not set aside a guilty verdict, absent other error, unless it is clearly a result of prejudice, bias or fraud, or is manifestly against the weight of credible evidence.

(citations omitted).

¶117.   Thorson's video taped confession was introduced into evidence and played for the jury. In his confession, Thorson stated that he bound McKinney's hands, gagged her with her brassiere and raped her. Then using a towel, he removed all fingerprints from McKinney's car. Thorson asked McKinney if she would tell anyone what had happened. Even though she indicated that she would not, Thorson slit her throat. Thorson removed several items from the car and began to walk away. McKinney was then able to scream for help, so Thorson returned to the car and shot McKinney in the head. On the advice of his girlfriend, Patricia Cook, he washed his hands and the knife in bleach and then buried all the items he had removed from the car. Cook then informed the police of Thorson's actions. In addition to Thorson's confession, the State introduced DNA evidence showing that the semen found in McKinney matched the DNA of Thorson. Viewing the evidence introduced by the State in the light most favorable to the verdict returned by the jury, Thorson's conviction of capital murder is supported by the overwhelming weight of the evidence adduced at trial. Therefore, this issue is without merit.

## CONCLUSION

¶118. For the foregoing reasons, we affirm both the judgment of conviction of capital murder and the death penalty sentence as rendered in the Circuit Court of the Second Judicial District of Harrison County.

¶119. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF DEATH BY LETHAL INJECTION, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, DICKINSON AND RANDOLPH, JJ., CONCUR. DIAZ AND GRAVES, JJ., NOT PARTICIPATING.**

## APPENDIX

## DEATH CASES AFFIRMED BY THIS COURT

*Powers v. State* --- So.2d --- (Miss. 2004)

*Branch v. State,* 882 So.2d 36 (Miss. 2004).

*Scott v. State,* 878 So.2d 933 (Miss. 2004).

*Lynch v. State,* 877 So.2d 1254 (Miss. 2004).

*Dycus v. State,* 875 So.2d 140 (Miss. 2004).

*Byrom v. State,* 863 So.2d 836 (Miss. 2003).

*Howell v. State,* 860 So.2d 704 (Miss. 2003).

*Howard v. State,* 853 So.2d 781 (Miss. 2003).

*Walker v. State,* 815 So.2d 1209 (Miss. 2002). *following remand.

*Bishop v. State,* 812 So.2d 934 (Miss. 2002).

*Stevens v. State,* 806 So.2d 1031 (Miss. 2002).

*Grayson v. State,* 806 So.2d 241 (Miss. 2002).

*Knox v. State,* 805 So.2d 527 (Miss. 2002).

*Simmons v. State,* 805 So.2d 452 (Miss. 2002).

*Berry v. State,* 802 So.2d 1033 (Miss. 2001).

*Snow v. State*, 800 So.2d 472 (Miss. 2001).

*Mitchell v. State,* 792 So.2d 192 (Miss. 2001).

*Puckett v. State,* 788 So.2d 752 (Miss. 2001). * following remand.

*Goodin v. State,* 787 So.2d 639 (Miss. 2001).

*Jordan v. State,* 786 So.2d 987 (Miss. 2001).

*Manning v. State,* 765 So.2d 516 (Miss. 2000). *following remand.

*Eskridge v. State,* 765 So.2d 508 (Miss. 2000).

*McGilberry v. State,* 741 So. 2d 894 (Miss. 1999)*.*

*Puckett v. State,* 737 So. 2d 322 (Miss. 1999).        *remanded for *Batson* hearing.

*Manning v. State,* 735 So. 2d 323 (Miss. 1999). *remanded for *Batson* hearing.

*Hughes v. State,* 735 So. 2d 238 (Miss. 1999).

*Turner v. State,* 732 So. 2d 937 (Miss. 1999).

*Smith v. State,* 729 So. 2d 1191 (Miss. 1998).

*Burns v. State,* 729 So. 2d 203 (Miss. 1998).

*Jordan v. State,* 728 So. 2d 1088 (Miss. 1998).

*Gray v. State,* 728 So. 2d 36 (Miss. 1998).

*Manning v. State,* 726 So. 2d 1152 (Miss. 1998).

*Woodward v. State,* 726 So. 2d 524 (Miss. 1997).

*Bell v. State,* 725 So. 2d 836 (Miss. 1998).

*Evans v. State,* 725 So. 2d 613 (Miss. 1997).

*Brewer v. State,* 725 So. 2d 106 (Miss. 1998).

*Crawford v. State,* 716 So. 2d 1028 (Miss. 1998).

*Doss v. State,* 709 So. 2d 369 (Miss. 1996).

*Underwood v. State,* 708 So. 2d 18 (Miss. 1998).

*Holland v. State,* 705 So. 2d 307 (Miss. 1997).

*Wells v. State,* 698 So. 2d 497 (Miss. 1997).

*Wilcher v. State,* 697 So. 2d 1087 (Miss. 1997).

*Wiley v. State,* 691 So. 2d 959 (Miss. 1997).

*Brown v. State*, 690 So. 2d 276 (Miss. 1996).

*Simon v. State*, 688 So. 2d 791 (Miss.1997).

*Jackson v. State*, 684 So. 2d 1213 (Miss. 1996).

*Williams v. State,* 684 So. 2d 1179 (Miss. 1996).

*Davis v. State,* 684 So. 2d 643 (Miss. 1996).

*Taylor v. State*, 682 So. 2d. 359 (Miss. 1996).

*Brown v. State*, 682 So. 2d 340 (Miss. 1996).

*Blue v. State*, 674 So. 2d 1184 (Miss. 1996).

*Holly v. State*, 671 So. 2d 32 (Miss. 1996).

*Walker v. State*, 671 So. 2d 581(Miss. 1995).

*Russell v. State*, 670 So. 2d 816 (Miss. 1995).

*Ballenger v. State*, 667 So. 2d 1242 (Miss. 1995).

*Davis v. State*, 660 So. 2d 1228 (Miss. 1995).

*Carr v. State*, 655 So. 2d 824 (Miss. 1995).

*Mack v. State*, 650 So. 2d 1289 (Miss. 1994).

*Chase v. State*, 645 So. 2d 829 (Miss. 1994).

*Foster v. State*, 639 So. 2d 1263 (Miss. 1994).

*Conner v. State*, 632 So. 2d 1239 (Miss. 1993).

*Hansen v. State*, 592 So. 2d 114 (Miss. 1991).

*Shell v. State*, 554 So. 2d 887 (Miss. 1989), *Shell v. Mississippi,* 498 U.S. 1 (1990) reversing, in part, and remanding, *Shell v. State*, 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*Davis v. State*, 551 So. 2d  165 (Miss. 1989).

*Minnick v. State*, 551 So. 2d 77 (Miss. 1989).

*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi*, 494 U.S. 1075 (1990) vacating and remanding *Pinkney v. State*, 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*Woodward v. State*, 533 So. 2d 418 (Miss. 1988).

*Nixon v. State*, 533 So. 2d 1078 (Miss. 1987).

*Cole v. State*, 525 So. 2d 365 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1346 (Miss. 1987).

*Lockett v. State*, 517 So. 2d 1317 (Miss. 1987).

*Faraga v. State*, 514 So. 2d 295 (Miss. 1987).
*\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987)*, Jones v. Mississippi*, 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Wiley v. State*, 484 So. 2d 339 (Miss. 1986).

*Johnson v. State*, 477 So. 2d 196 (Miss. 1985).

*Gray v. State*, 472 So. 2d 409 (Miss. 1985).

*Cabello v. State*, 471 So. 2d 332 (Miss. 1985).

*Jordan v. State*, 464 So. 2d 475 (Miss. 1985).

*Wilcher v. State*, 455 So. 2d 727 (Miss. 1984).

*Billiot v. State*, 454 So. 2d 445 (Miss. 1984).

*Stringer v. State*, 454 So.  2d 468 (Miss. 1984).

*Dufour v. State*, 453 So. 2d 337 (Miss. 1984).

*Neal v. State*, 451 So. 2d 743 (Miss. 1984).

*Booker v. State*, 449 So. 2d 209 (Miss. 1984).

*Wilcher v. State*, 448 So. 2d 927 (Miss. 1984).

*Caldwell v. State*, 443 So. 2d 806 (Miss. 1983).

*Irving v. State*, 441 So. 2d 846 (Miss. 1983).

*Tokman v. State*, 435 So. 2d 664 (Miss. 1983).

*Leatherwood v. State*, 435 So. 2d 645 (Miss. 1983).

*Hill v. State*, 432 So. 2d 427 (Miss. 1983).

*Pruett v. State*, 431 So. 2d 1101 (Miss. 1983).

*Gilliard v. State*, 428 So. 2d 576 (Miss. 1983).

*Evans v. State*, 422 So. 2d 737 (Miss. 1982).

*King v. State*, 421 So. 2d 1009 (Miss. 1982).

*Wheat v. State*, 420 So. 2d 229 (Miss. 1982).

*Smith v. State*, 419 So. 2d 563 (Miss. 1982).

*Johnson v. State*, 416 So. 2d 383 (Miss.1982).

*Edwards v. State*, 413 So. 2d 1007 (Miss. 1982).

*Bullock v. State*, 391 So. 2d 601 (Miss. 1980).

*Reddix v. State*, 381 So. 2d 999 (Miss. 1980).

*Jones v. State*, 381 So. 2d 983 (Miss. 1980).

*Culberson v. State*, 379 So. 2d 499 (Miss. 1979).

*Gray v. State*, 375 So. 2d 994 (Miss. 1979).

*Jordan v. State*, 365 So. 2d 1198 (Miss. 1978).

*Voyles v. State*, 362 So. 2d 1236 (Miss. 1978).

*Irving v. State*, 361 So. 2d 1360 (Miss. 1978).

*Washington v. State*, 361 So. 2d 6l (Miss. 1978).

*Bell v. State*, 360 So. 2d 1206 (Miss. 1978).

\* Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.

# DEATH CASES REVERSED AS TO GUILT PHASE
## AND SENTENCE PHASE

*Flowers v. State,* 842 So.2d 531 (Miss. 2003).

*Randall v. State,* 806 So. 2d 185 (Miss. 2002).

*Flowers v. State,* 773 So.2d 309 (Miss. 2000).

*Edwards v. State,* 737 So. 2d 275 (Miss. 1999).

*Smith v. State,* 733 So. 2d 793 (Miss. 1999).

*Porter v. State,* 732 So.2d 899 (Miss. 1999).

*Kolberg v. State,* 704 So. 2d 1307 (Miss. 1997).

*Snelson v. State,* 704 So. 2d 452 (Miss. 1997).

*Fusilier v. State,* 702 So. 2d 388 (Miss. 1997).

*Howard v. State,* 701 So. 2d 274 (Miss. 1997).

*Lester v. State,* 692 So. 2d 755 (Miss. 1997).

*Hunter v. State*, 684 So. 2d 625 (Miss. 1996).

*Lanier v. State*, 684 So. 2d 93 (Miss. 1996).

*Giles v. State,* 650 So. 2d 846 (Miss. 1995).

*Duplantis v. State*, 644 So. 2d 1235 (Miss. 1994).

*Harrison v. State*, 635 So. 2d 894 (Miss. 1994).

*Butler v. State*, 608 So. 2d 314 (Miss. 1992).

*Jenkins v. State*, 607 So. 2d 1171 (Miss. 1992).

*Abram v. State*, 606 So. 2d 1015 (Miss. 1992).

*Balfour v. State*, 598 So. 2d 731 (Miss. 1992).

*Griffin v. State*, 557 So. 2d 542 (Miss. 1990).

*Bevill v. State*, 556 So. 2d 699 (Miss. 1990).

*West v. State*, 553 So. 2d 8 (Miss. 1989).

*Leatherwood v. State*, 548 So. 2d 389 (Miss. 1989).

*Mease v. State*, 539 So. 2d 1324 (Miss. 1989).

# DEATH CASES REVERSED AS TO GUILT PHASE
## AND SENTENCE PHASE
### (continued)

*Houston v. State*,  531 So. 2d 598 (Miss. 1988).

*West v. State*, 519 So. 2d 418 (Miss. 1988).

*Davis v. State*, 512 So. 2d 129l (Miss. 1987).

*Williamson v. State*, 512 So. 2d 868 (Miss. 1987).

*Foster v. State*, 508 So. 2d 1111 (Miss. 1987).

*Smith v. State*, 499 So. 2d 750 (Miss. 1986).

*West v. State*, 485 So. 2d 681 (Miss. 1985).

*Fisher v. State*, 481 So. 2d 203 (Miss. 1985).

*Johnson v. State*, 476 So. 2d 1195 (Miss. 1985).

*Fuselier v. State*, 468 So. 2d 45 (Miss. 1985).

*West v. State*, 463 So. 2d 1048 (Miss. 1985).

*Jones v. State*, 461 So. 2d 686 (Miss. 1984).

*Moffett v. State*, 456 So. 2d 714 (Miss. 1984).

*Lanier v. State*, 450 So. 2d 69 (Miss. 1984).

*Laney v. State*, 421 So. 2d 1216 (Miss. 1982).

# DEATH CASES REVERSED
## AS TO PUNISHMENT AND REMANDED
## FOR RESENTENCING TO LIFE IMPRISONMENT

*Reddix v. State*, 547 So. 2d 792 (Miss. 1989).

*Wheeler v. State*, 536 So. 2d 1341 (Miss. 1988).

*White v. State*, 532 So. 2d 1207 (Miss. 1988).

*Bullock v. State*, 525 So. 2d 764 (Miss. 1987).

*Edwards v. State*, 441 So. 2d 84 (Miss. l983).

*Dycus v. State*, 440 So. 2d 246 (Miss. 1983).

*Coleman v. State*, 378 So. 2d 640 (Miss. 1979).

# DEATH CASES REVERSED AS TO
## PUNISHMENT AND REMANDED FOR A NEW TRIAL
## <u>ON SENTENCING PHASE ONLY</u>

*King v. State,* 784 So.2d 884 (Miss. 2001).

*Walker v. State,* 740 So.2d 873 (Miss. 1999).

*Watts v. State,* 733 So.2d 214 (Miss. 1999).

*West v. State,* 725 So. 2d 872 (Miss. 1998).

*Smith v. State*, 724 So. 2d 280 (Miss. 1998).

*Berry v. State,* 703 So. 2d 269 (Miss. 1997).

*Booker v. State*, 699 So. 2d 132 (Miss. 1997).

*Taylor v. State*, 672 So. 2d 1246 (Miss. 1996).

*\*Shell v. State*, 554 So. 2d 887 (Miss. 1989), *Shell v. Mississippi*, 498 U.S. 1 (1990) reversing, in part, and remanding, *Shell v. State* 595 So. 2d 1323 (Miss. 1992) remanding for new sentencing hearing.

*\*Pinkney v. State*, 538 So. 2d 329 (Miss. 1989), *Pinkney v. Mississippi,* 494 U.S. 1075 (1990) vacating and remanding, *Pinkney v. State,* 602 So. 2d 1177 (Miss. 1992) remanding for new sentencing hearing.

*\*Clemons v. State*, 535 So. 2d 1354 (Miss. 1988), *Clemons v. Mississippi*, 494 U.S. 738 (1990) vacating and remanding, *Clemons v. State*, 593 So. 2d 1004 (Miss. 1992) remanding for new sentencing hearing.

*\*Jones v. State*, 517 So. 2d 1295 (Miss. 1987), *Jones v. Mississippi,* 487 U.S. 1230 (1988) vacating and remanding, *Jones v. State*, 602 So. 2d 1170 (Miss. 1992) remanding for new sentencing hearing.

*Russell v. State*, 607 So. 2d 1107 (Miss. 1992).

*Holland v. State*, 587 So. 2d 848 (Miss. 1991).

*Willie v. State*, 585 So. 2d 660 (Miss. 1991).

*Ladner v. State*, 584 So. 2d 743 (Miss. 1991).

*Mackbee v. State*, 575 So. 2d 16 (Miss. 1990).

**DEATH CASES REVERSED AS TO**
**PUNISHMENT AND REMANDED FOR A NEW TRIAL**
**ON SENTENCING PHASE ONLY**
**(continued)**

*Berry v. State*, 575 So. 2d 1 (Miss. 1990).

*Turner v. State*, 573 So. 2d 657 (Miss. 1990).

*State v. Tokman*, 564 So. 2d 1339 (Miss. 1990).

*Johnson v. State*, 547 So. 2d 59 (Miss. 1989).

*Williams v. State*, 544 So. 2d 782 (Miss. 1989); *sentence aff'd* 684 So. 2d 1179 (1996).

*Lanier v. State*, 533 So. 2d 473 (Miss. 1988).

*Stringer v. State*, 500 So. 2d 928 (Miss. 1986).

*Pinkton v. State*, 481 So. 2d 306 (Miss. 1985).

*Mhoon v. State*, 464 So. 2d 77 (Miss. 1985).

*Cannaday v. State*, 455 So. 2d 713 (Miss. 1984).

*Wiley v. State*, 449 So. 2d 756 (Miss. 1984); resentencing affirmed, *Wiley v. State*, 484 So. 2d 339 (Miss. 1986), *cert. denied Wiley v. Mississippi*, 479 U.S. 1036 (1988); resentencing ordered, *Wiley v. State,* 635 So. 2d 802 (Miss. 1993) following writ of habeas corpus issued pursuant to *Wiley v. Puckett*, 969 So. 2d 86, 105-106 (5th Cir. 1992); resentencing affirmed, *Wiley v. State*, 95-DP-00149, February 13, 1997 (rehearing pending).

*Williams v. State*, 445 So. 2d 798 (Miss. 1984).   *   Case was originally affirmed in this Court but on remand from U. S. Supreme Court, case was remanded by this Court for a new sentencing hearing.